[No. E002807. Fourth Dist., Div. Two. Aug. 29, 1986.]

CAL-WEST NATIONAL BANK, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
A. L. PHILLIPS et al., Real Parties in Interest.

**COUNSEL**

Frandzel & Share, Peter Csato and David K. Golding for Petitioner.

No appearance for Respondent.

Best, Best & Krieger and J. Michael Summerour for Real Parties in Interest.

**OPINION**

**KAUFMAN, J.**—Petitioner Cal-West National Bank, a construction lender, demurred to a complaint charging it with conspiracy to defraud several subcontractors and materialmen, who were the plaintiffs below and are the real parties in interest (real parties) in this writ proceeding. Respondent superior court overruled petitioner's demurrer and directed it to answer the complaint. Petitioner now seeks a peremptory writ of mandate compelling respondent superior court to sustain the demurrer, arguing real parties' claim for damages is barred under a provision of the California Mechanics' Lien Law (Civ. Code, § 3082 et seq.).[1] Petitioner's contention is not meritorious. Accordingly, issuance of a peremptory writ will be denied.

*Facts*

Rush Development, Inc. (Rush), a defendant in real parties' lawsuit but not a party to this writ proceeding, was the general contractor for several works of improvement in Riverside County. Real parties contracted with Rush as subcontractors and materialmen on the projects. The bulk of the causes of action included in real parties' second amended complaint are directed at Rush and defendants other than petitioner on claims of breach of contract, common counts for restitution and foreclosure of mechanics' liens. Also included is one count against Rush for promissory fraud.

Petitioner is named as a defendant only in real parties' 24th cause of action, a claim of conspiracy to commit fraud. Real parties allege that Rush Development, Inc. conspired with defendant Charles L. Foster, petitioner's employee, to divert moneys from the construction loan fund through the following scheme: "[D]efendants would periodically request defendant Foster to prematurely disburse funds to defendant Rush for a portion of improvements allegedly made on the works of improvement when each of the defendants knew that, either the request was false since the work described had not in fact been performed and that defendants intended to divert the loan proceeds to their own personal uses, or if the work had been performed, that defendants had no intention of paying plaintiffs for the labor and/or materials provided to the various parcels of real property."

Aside from the allegations charging Cal-West with fraud based on the acts of its employee Foster under the doctrine of respondeat superior, the complaint further alleged: "Defendant Cal-West furthered the conspiracy and ratified and adopted the acts of the remaining defendants by accepting, without compensation to plaintiffs, the benefits of plaintiffs' labor and/or

---

[1]All statutory references will be to the Civil Code.

materials, and the interest payment benefits accruing as a result of the premature disbursement of funds to defendant Rush."

Petitioner contended in its unsuccessful demurrer and now contends in its petition for writ of mandate that any tort claim of conspiracy to defraud brought by subcontractors or materialmen is barred under Civil Code section 3264, which states: "The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with *respect to any fund for payment of construction costs,* are governed exclusively by Chapters 3 (commencing with section 3156) and 4 (commencing with section 3179) of this title, and no person may assert any legal or equitable right *with respect to such fund,* other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters." (Italics added.) The provisions of the Mechanics' Lien Law alluded to in section 3264 require that all claims against construction loan funds by subcontractors and materialmen be made and enforced through the stop notice procedure.

## Discussion

Petitioner argues in effect that section 3264 was intended by the Legislature to bar any action in tort against construction lenders by subcontractors and materialmen. Petitioner's position has no merit and cannot be sustained. The clear language of the provision and its legislative history indicate it was meant to define and limit the rights of subcontractors and materialmen to disbursements from ". . . any fund for *payment of construction costs,"* i.e., contractual and quasi-contractual rights arising out of construction agreements. "'Section 3264 of California Civil Code was . . . designed to protect investors in construction projects. Enacted as part of California's comprehensive Mechanics' Lien Law, Cal. Civ. Code, § 3082 et seq., this section was drafted in response to mortgage lender protests against state court decisions holding that even after completion of construction, a lien claimant may have an equity interest in the building loan account that is prior and superior to the rights of both the lender and the builder. . . . The California legislature's solution was to limit the rights that might be asserted "with respect to any fund for payment of construction costs." Section 3264 provides that claims upon construction loan funds by persons furnishing services or material are confined to those based on statutory mechanics' lien and stop notice procedures, and that "no person may assert any [other] legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund."'" (*Pankow Const. Co.* v. *Advance Mortg. Corp.* (9th Cir. 1980) 618 F.2d 611, 614, fn. omitted.) Hence, 'section 3264 abolishes all theories of equitable liens or trust funds.' (*Boyd & Lovesee Lumber Co.* v.

*Western Pacific Financial Corp.* (1975) 44 Cal.App.3d 460, 465 . . ., cited with approval in *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 827, fn. 25 . . . .)" (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586-587, fn. omitted [218 Cal.Rptr. 388].)

It is evident from the language of section 3264 and judicial decisions interpreting it that the Legislature's central intent was to make unavailable to unpaid subcontractors and materialmen equitable lien and equitable trust fund remedies. In fact, section 3264 all but sounded the death knell for the equitable lien remedy in the construction loan field. (*Boyd & Lovesee Lumber Co.* v. *Western Pacific Financial Corp.* (1975) 44 Cal.App.3d 460, 465 [118 Cal.Rptr. 699].)

However, section 3264 has no application to claims of personal liability against construction lenders on account of their alleged intentionally wrongful diversion of construction loan funds. When real parties seek damages for conspiracy to defraud, their claim in actuality is not ". . . with respect to any fund for payment of construction costs" at all. Any resulting money judgment against petitioner would be satisfied from its general assets, not the construction loan fund. Petitioner's attempt to use section 3264 to shield itself against personal liability for an alleged conspiracy to misappropriate loan funds ignores both the plain language of the statute and the legislative intent behind it.

■ Petitioner also contends that real parties' claim based on conspiracy to defraud should not have survived demurrer because (1) no facts were alleged giving rise to a legally recognizable tort duty and (2) no actual damages caused by the conspiracy were pleaded. However, the first argument again depends on petitioner's overly expansive interpretation of section 3264 and the second is simply incorrect. In no way does section 3264 destroy the common law tort duty of construction lenders to subcontractors and materialmen to refrain from engaging in conspiracies to defraud them. As to damages, the second amended complaint includes an express allegation that the conspiracy to defraud caused real parties monetary damage.

■ Finally, petitioner contends the 24th cause of action in real parties' second amended complaint must fail for uncertainty. This argument focuses on the incorporation by reference in this 24th cause of action of the 2d through 23d causes of action, inclusive. Petitioner asserts that "[o]ne possible interpretation of such a pleading, of course, is that Real [Parties] in Interest [are] attempting to state against Petitioner all of the causes of action contained in the second through twenty-third causes of action, even though Petitioner is not named as a defendant in any portion of the second through twenty-third causes of action." Nonsense. As petitioner must recognize and

appears to acknowledge, each count included in the second amended complaint specifically indicates the defendants proceeded against in that cause of action. It is axiomatic that a civil plaintiff may for the sake of convenience incorporate by reference previous portions of his pleading for informational purposes only.

### Disposition

The petition for a peremptory writ of mandate is denied. The alternative writ is hereby discharged. Real parties shall recover costs.

Rickles, Acting P. J., and McDaniel, J., concurred.