[No. B085079. Second Dist., Div. Three. Feb. 29, 1996.]

MECHANICAL WHOLESALE CORPORATION, Plaintiff and Appellant,
v.
FUJI BANK, LIMITED, Defendant and Respondent.

**COUNSEL**

Hunt, Ortmann, Blasco, Palffy & Rossell, Gordon Hunt, Dale A. Ortmann and Eric C. Smith for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Robert B. Flaig and Beverly Johnson for Defendant and Respondent.

**OPINION**

**CROSKEY, J.**—Plaintiff Mechanical Wholesale Corporation appeals from an order of dismissal entered after the trial court sustained, without leave to amend, the demurrer of defendant the Fuji Bank, Limited (Fuji Bank). The thrust of plaintiff's argument is that the trial court misapplied the law

relating to stop notices which are given, pursuant to California's mechanic's lien laws,[1] to construction lenders (such as Fuji Bank), by subcontractors (such as plaintiff) when general contractors either refuse or are unable to pay the subcontractors for the subcontractors' work or materials. Plaintiff also appeals from a postdismissal order awarding attorney fees to Fuji Bank, asserting there is no statutory basis for the award.

The principal issue presented by this case, which apparently has never before been considered in a published California opinion, is whether stop notices can be applied to construction funds held and administered in California for private works of improvement on sites located *outside* of California. As we conclude that a stop notice may only be served and enforced by a party *entitled* to record a mechanic's lien, we necessarily hold that a stop notice is not an available remedy to enforce payment for labor or materials furnished to a private work of improvement outside of California where a mechanics' lien obviously could not be recorded under California law. We also hold that Fuji Bank, as the prevailing party, was entitled to recover attorney fees under the relevant statute. We therefore affirm the judgment.

## BACKGROUND OF THE CASE[2]

Plaintiff filed this action in January 1994 to enforce a bonded stop notice. According to plaintiff's complaint, plaintiff provided labor, materials and equipment for tenant build-out projects in a commercial building in Hawaii. The building is owned by Bishop Street Associates Limited. Plaintiff, a California-based subcontractor, entered into a contract with the general contractor, Daniel's Management, Inc., on March 31, 1992, to provide construction services for the Hawaiian project. Plaintiff provided these services between March 31, 1992 and November 30, 1993. The reasonable value of the unpaid services is $505,527.

Plaintiff's complaint further alleges that Fuji Bank entered into an agreement with the owner and with the general contractor whereby it would loan them money for the tenant improvements on the project. The loan funds would be maintained in Fuji Bank's Los Angeles offices and used exclusively for paying the costs of the tenant improvements and for paying

---

[1]Stop notice and mechanic's lien laws relating to private works of improvement are found in the Civil Code, commencing with section 3082. The provisions relating specifically to mechanics' liens are found in Civil Code sections 3109 through 3154; those relating to stop notices are in sections 3156 through 3176.5.

Unless otherwise indicated, all statutory references herein are to the Civil Code.

[2]The factual background upon which we rely is based upon the allegations of plaintiff's complaint which, under the usual rules on appeal, we assume to be true.

persons furnishing services for those improvements. According to the complaint, this construction loan fund constituted trust funds for the benefit of persons furnishing services for the tenant improvements, including plaintiff.[3]

The complaint alleges that plaintiff gave Fuji Bank, the owner, and the general contractor a timely written preliminary notice in accordance with section 3097.[4] On December 16, 1993, plaintiff served a stop notice on Fuji Bank in the sum of $505,527, together with the required surety bond in the sum of one and one-quarter times the amount of plaintiff's claim. At the time plaintiff served the stop notice, Fuji Bank had sufficient funds to pay plaintiff's claim. However, it failed and refused to honor the notice and has not paid plaintiff the sums which are claimed to be due.

Plaintiff prayed that the court deem the stop notice to be an equitable garnishment and lien on the moneys in the construction fund at the time of plaintiff's service of the bonded stop notice, in the total amount of: (1) plaintiff's unpaid services, (2) the premiums for plaintiff's bond, and (3) plaintiff's attorney fees. Plaintiff further prayed for a judgment against Fuji Bank in the amount of its unpaid services, plus interest, bond premiums, costs of suit, and attorney fees, and also prayed that a trust be imposed on the construction loan fund for those amounts.[5]

---

[3]However, plaintiff did not allege that it, in any way, relied upon Fuji Bank in entering into its subcontract with the general contractor or in performing services thereunder; nor does plaintiff claim that it had any contractual privity with Fuji Bank.

[4]The timely service of such a notice is a prerequisite to the validity of a subsequently filed stop notice. (§ 3160.) The record does not disclose the date on which this notice was given. However, it is alleged that the notice was given pursuant to the provisions of section 3097; therefore, we must assume that it was given within 20 days of March 31, 1992, the date when plaintiff alleges it first provided its services to the project. (§ 3097, subd. (d).)

[5]However, plaintiff makes no argument on appeal with respect to its allegation that it has some trust or other equitable interest in such funds apart from any right it may have under California's stop notice provisions; indeed, it is clear that the purpose of the Legislature, in enacting section 3264, was to eliminate equitable lien and equitable trust fund remedies. (*Cal-West Nat. Bank.* v. *Superior Court* (1986) 185 Cal.App.3d 96, 100 [229 Cal.Rptr. 431].) Section 3264 provides: "The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156 [relating to private works of improvement]) and 4 (commencing with Section 3179 [relating to public works of improvement]) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters."

In its opening brief, plaintiff describes the sole issue presented to this court as follows: "Is a California construction lender who makes a construction loan on a Hawaii project, and provides the construction loan funds to finance the construction costs for that construction project, and which administers and distributes the construction loan funds from its office in California, subject to the Bonded Stop Notice Law of the State of California?"

Fuji Bank demurred generally to the complaint, contending: (1) California's stop notice remedy does not apply to works of improvement located outside of California and (2) plaintiff is an unlicensed contractor and therefore cannot recover on any claim. The trial court sustained the demurrer without leave to amend, ruling only on the former ground, and specifically not ruling on the latter.[6] An order dismissing the case was signed and filed April 20, 1994. Thereafter, Fuji Bank filed a memorandum of costs and noticed a motion for attorney fees. Plaintiff moved to tax costs. On June 8, 1994, the trial court ruled on the motions, granting each motion in part. The court awarded $15,592 in attorney fees to Fuji Bank. Thereafter, plaintiff filed this timely appeal, challenging the rulings on both the demurrer and the attorney fee award.

## ISSUES ON APPEAL

In this appeal, we are asked to determine whether a California subcontractor who works on a private construction project located on real property outside of California, but which is funded with moneys loaned and administered by a bank located in California, is entitled to rely upon California's mechanic's lien law provisions to enforce a stop notice served by the subcontractor on the California construction lender. As we answer that question in the negative, we also address the validity of the order awarding attorney fees to Fuji Bank which, it is claimed, are authorized under section 3176.

## DISCUSSION

### 1. *Standard of Review*

We review this matter de novo. We treat the allegations of plaintiff's complaint as true; indeed, there appears to be no dispute whatever about the operative facts in this matter. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The issue presented to us for decision will turn upon our construction and application of California's statutory scheme for enforcement of mechanics' liens and stop notices.

---

[6]The trial court was correct in so limiting its ruling. Even assuming that plaintiff did not hold a valid California contractor's license (and there was some evidence, received by the trial court pursuant to judicial notice, that this was the case), California's contractor licensure law has no application to projects located outside of California. (*Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 679-680 [48 Cal.Rptr. 901].) Thus, plaintiff, even though doing business in California, was not required to have a contractor's license in order to have standing to bring suit on a contract to provide construction services in Hawaii. Moreover, plaintiff alleged that it was duly licensed in Hawaii.

## 2. The Nature of Stop Notices

■ Stop notices are different from mechanics' liens in that they attach to the funds of the owner of the property, or the construction loan proceeds from a lender, rather than to the real property being improved. (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 809 [132 Cal. Rptr. 477, 553 P.2d 637].) By recording a mechanic's lien, the claimant obtains a lien upon a property owner's land; by serving a stop notice, a priority claim is obtained upon moneys. (*Id.* at p. 811.) Stop notices are independent of and cumulative to mechanics' liens rights; they are "an additional remedy." (*Id.* at p. 809.) Absent a direct contract right, service and enforcement of a stop notice provides the only remedy available to the unpaid subcontractor to reach the funds held by the construction lender. (§ 3264.)

"After giving 20 days preliminary notice (§ 3160), the materialman may serve a stop notice upon the owner or the construction lender (§§ 3158, 3159). Upon receipt of such notice, the owner must withhold from the general contractor sufficient money to pay the stop notice claimant. (§ 3161.) [¶] Unlike the owner, the lender may disregard an unbonded stop notice [citation], but upon receipt of a notice accompanied by a bond equal to one and one-fourth times the amount of claims (§ 3083) the lender must withhold from the unexpended balance of the loan fund a sum sufficient to pay the claim. (§ 3162.) Failure of the owner or lender to withhold money as required by the notice may render him personally liable to the claimant, notwithstanding the absence of privity of contract. [¶] Although the mechanics' lien may provide adequate protection for materialmen when the owner finances the improvement from his own funds, such liens can be wiped out by the foreclosure of a lender's trust deed. The value of the stop notice lies in the fact that its lien attaches to the unexpended balance of the loan, not to the land, and thus survives foreclosure of the trust deed. The stop notice claimant also acquires a right to the fund superior to that of any assignee from the owner or contractor (§ 3166), and superior to the lender's contractual right to employ unexpended funds to complete the work of improvement[.] [Citations.] [¶] . . . The obligation of the owner or lender to withhold funds terminates unless the claimant files suit to enforce the stop notice within 90 days after expiration of the period for recording claims of lien. (§ 3172.)" (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d at pp. 809-810, fn. omitted.)

Given the nature of the stop notice, one can see the argument to be made for its application to construction work performed outside of California. The

stop notice's lien attaches to the construction funds, not to the land upon which the construction is performed. Thus, it is not an attempt to affect land located outside of California. It is a remedy which is independent of the remedy which does attach to the land—the mechanic's lien remedy. However, is that a sufficient basis to warrant giving *extraterritorial* effect to California's statutory scheme?[7] We think not; however there is little direct authority on the issue.

### 3. *California's Statutory Mechanic's Lien Scheme Has Application Only to California Projects*

One of the cases principally relied upon by Fuji Bank (*ABC Plumbing & Heating Co.* v. *Vernon Savings & Loan Assn.* (1989) 208 Cal.App.3d 1370, 1380 [257 Cal.Rptr. 139]) simply assumed that California's mechanic's lien law statutory scheme was never intended to have any extraterritorial application. Although we happen to believe that such assumption was correct,[8] that was not the issue before the court in *ABC Plumbing* and no analysis or reasoning was given in support of its assumption.[9] Nonetheless, it is our view that such conclusion is in fact supported by both the relevant statutory provisions and public policy considerations.

---

[7]Apparently, Hawaii has a mechanic's lien law, but it does not include any stop notice procedure. In any event, it is clear that plaintiff is relying on the application of the California procedure and urges that it is properly applied against a California-based lender, *irrespective of where the project is located.*

[8]Numerous works by legal scholars and practitioners in the field of California's mechanic's lien law also seem to make the same assumption. They simply state without discussion or explanation that the persons entitled to enforce a California stop notice are limited to those persons entitled to record a California mechanic's lien which, as we explain below, would necessarily bar any extraterritorial application of California's law. (See Acret, Attorney's Guide to California Construction Contracts and Disputes (Cont.Ed.Bar 2d ed. 1990) § 3.97, p. 225 [stating that "anyone who contributes work, equipment, or material to a work of improvement and thereby obtains mechanic's lien rights also has stop notice rights"]; Miller & Starr, Cal. Real Estate (2d ed. 1990) § 26.59, p. 552 [same].)

[9]In *ABC Plumbing,* the issue presented was whether a California court was the proper forum to adjudicate a stop notice claim against a financial institution which had been declared insolvent by the Federal Home Loan Bank Board and put under the receivership of the Federal Savings & Loan Insurance Corporation. The court concluded that the state courts had not been divested of the power to adjudicate such claims; it held that the federal regulatory agencies had no special expertise "in the area of the [stop notice and mechanics' lien] claims before [the court] which were created by the state Legislature specifically *for the protection of California material workers, suppliers and subcontractors who improve real property in [California]."* (*ABC Plumbing & Heating Co.* v. *Vernon Savings & Loan Assn., supra,* 208 Cal.App.3d at p. 1380, italics added.) The emphasized portion of the court's opinion is obviously dictum and is unsupported by any reasons or analysis. It is thus of only marginal assistance to us in this matter.

a. *Statutory Language Appears to Assume Application to a California Work of Improvement*

California's statutory mechanic's lien and stop notice provisions represent an integrated scheme obviously designed to provide maximum protection to laborers and materialmen. When read as a whole, they compel the conclusion that they were intended to be applied only to California works of improvement. Several examples will serve to illustrate the point.

Section 3097 provides for a preliminary 20-day notice to be given to the property owner, general contractor, and construction lender (if any) before a claimant may record a mechanic's lien or file a stop notice. Fuji Bank argues that section 3097 (which was amended in 1994 in ways not impacting this case) speaks of acts which would only affect property within this state. For example, section 3097, subdivision (f)(1) addresses the delivery of the 20-day notice to persons residing within this state, and it provides that the notice may be delivered to the person personally, or left at his home or business, or may be mailed to such person. The mail may be addressed to his home, to his business, to the address on *"the building permit on file with the authority issuing a building permit for the work,"* or to the address on the recorded construction trust deed, if any. Subdivision (i) directs every governmental authority issuing building permits to provide spaces, in its application forms for building permits, for the applicant to enter information about a construction lender, if any, and keep that information available for public inspection. Subdivision (o) permits, but does not require, the filing of the notice with the county recorder "in the county in which any portion of the property is located."

Section 3160 states in pertinent part as follows: "Service of a . . . bonded stop notice shall be effective only if the claimant: [¶] (a) Gave the preliminary 20-day notice . . . in accordance with the provisions of Section 3097 if required by that section; and [¶] (b) Served . . . his bonded stop notice . . . *prior to the expiration of the period within which his claim of lien must be recorded . . . .*" (Italics added.)

Section 3093, which discusses the requirements of a "Notice of Completion," which may be filed once the work of improvement is completed and which, if filed, limits the period of time in which a claimant may record a mechanic's lien or stop notice, states in pertinent part as follows: "The notice of completion shall be recorded in the office of the county recorder of the county in which the site is located, within 10 days after such completion."

Three details about sections 3160 and 3093 are notable. First, section 3160, subdivision (b) states that the time period for service of the bonded stop notice is identical to the time period within which the claimant's mechanic's lien must be recorded. Second, under section 3093, the time for pursuing a California stop notice may depend on when and if a "Notice of Completion" (a creature of California statute) is recorded in a county recorder's office in the county where the property is located. Since California cannot compel another state's officials to record anything, section 3093 necessarily assumes that the site of the work is in a California county. Also, application of the statute would make no sense if the property was in another state which has no "notices of completion," "county recorders," or even "counties." Third, section 3160, subdivision (a), renders a stop notice ineffective unless the subcontractor has complied with section 3097, discussed above, which contains a number of requirements which make sense only if limited to works of improvement located in California. Similarly, owners and lenders can protect themselves against stop notices by securing *and recording* a payment bond from the general contractor. (§§ 3161, 3162, 3235.) These statutory provisions likewise necessarily assume a California situs for the work of improvement.

Most significantly, section 3159 limits the class of claimants entitled to a stop notice on a private work of improvement as follows: "Any of the persons named in Sections 3110, 3111, and 3112 may . . . give to a construction lender a stop notice or a bonded stop notice." (§ 3159.)[10] The reference to sections 3110, 3111, and 3112 effectively identifies those parties qualified to file stop notices *as persons entitled to a mechanic's lien.* Admittedly, sections 3111 (allowing liens by express trust funds under collective bargaining agreements) and 3112 (allowing liens for site improvements), have no application to this case, but section 3110 states in pertinent part: "Mechanics . . . subcontractors, . . . and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on . . . a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials . . . ." Section 3159, by limiting its application to those parties described in section 3110, similarly restricts the parties who will be authorized to file and serve a stop notice. ■ The stop notice remedy was unknown at common law (*Connolly Development Inc.* v. *Superior Court, supra,* 17 Cal.3d at p. 815); it is

---

[10]Section 3159, an integral part of the mechanic's lien law legislative package which was enacted in 1969 (Stats. 1969, ch. 1362, § 2, p. 2752 et seq.), specifically provides in relevant part: "Any of the persons named in sections 3110, 3111 and 3112 may, prior to the expiration of the period within which *his or her claim of lien must be recorded under Chapter 2 (commencing with Section 3109),* give to a construction lender a stop notice or a bonded stop notice." (Italics added.)

█

necessarily a creature of statute and can only exist as expressly authorized by statute. (§ 3264.)[11]

█       Thus, reading these statutory provisions together (i.e., §§ 3110 and 3159), it seems clear that *with respect to a private work of improvement,* a party is entitled to serve and enforce a California stop notice *only* if such party is entitled to record a California mechanic's lien. While the Supreme Court has stated the stop notice remedy is independent of, but cumulative to, any right to assert a mechanic's lien (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d at p. 809), that simply means that *an entitled party* may assert either or both remedies; and a party entitled to record a mechanic's lien need not have recorded one in order to serve a valid stop notice. It does not follow, however, that the *Connolly* court meant to say that a party *not entitled to file a mechanic's lien* (§ 3110), may nonetheless file a stop notice. Such an interpretation of *Connolly*'s holding, which is urged upon us by plaintiff, would be directly contrary to the clear import of the statutory language used in sections 3110 and 3159 and the imperative of section 3264.

Every statute should be construed and applied "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82, 100 [266 Cal.Rptr. 117, 785 P.2d 500].) The right to serve and enforce a stop notice was created by the Legislature because of the perceived inadequacy, in certain foreclosure circumstances, of a mechanic's lien which was necessarily junior to the construction lender's more senior loan. (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d. at p. 809.) We can find no basis whatever for the proposition advanced by plaintiff that such right should be liberally construed and applied so as to provide a California remedy for unpaid subcontractors, laborers and materialmen who worked on projects located in other states. We thus conclude that the right to serve and enforce a stop notice is limited to subcontractors, laborers and materialmen who are *entitled* to file a mechanic's lien (§ 3159), whether or not they actually do so.

---

[11]It has been noted that section 3264 " 'was drafted in response to mortgage lender protests against state court decisions holding that even after completion of construction, a lien claimant may have an equity interest in the building loan account that is prior and superior to the rights of both the lender and the builder. . . . The California legislature's solution was to limit the rights that might be asserted "with respect to any fund for payment of construction costs." Section 3264 provides that claims upon construction loan funds by persons furnishing services or material are confined to those based on statutory mechanics' lien and stop notice procedures, and that "no person may assert any [other] legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund." ' " (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388] [quoting from *Pankow Const. Co.* v. *Advance Mortg. Corp.* (9th Cir. 1980) 618 F.2d 611, 614].)

b. *Policy Considerations Support Limiting Application to California Projects.*

■ Public policy considerations also support our decision to deny extraterritorial application of California's stop notice provisions. First, given that the stop notice remedy primarily exists to solve the problem created by a senior foreclosure which destroys the value of a junior mechanic's lien, we should not construe and apply the stop notice provisions to give them a scope and effect broader than their original function and purpose.

Second, California has no real interest in assuring, *through application of its mechanic's lien statutes,* payment to subcontractors, laborers and materialmen who work on projects located in other states. The accidental circumstance that the construction lender is based in California does not alter this conclusion. California's stop notice statutes were enacted to provide an additional remedy for the unpaid subcontractor, laborer or materialman. As we have already noted, such additional remedy, while both independent and cumulative, is nonetheless an integral part of the mechanic's lien statutes and, for the reasons discussed above, cannot be disjunctively applied in the manner advanced by plaintiff.

Third, the statutory provisions contained in California law (e.g., §§ 3161, 3162 and 3235) relating to actions which owners and lenders can take to protect themselves against stop notices (i.e., securing *and recording* a payment bond from the general contractor) would be unavailable to them unless they had some reason to believe California law would be applied and Hawaii's recording laws permitted compliance. On this record, we have no reason to believe that either proposition is true.

■ Finally, the stop notice statute created a new remedy unknown to the common law which imposes upon a construction lender a liability to the claimant which it had not contractually agreed to assume; indeed, it is a liability which exists in the absence of any contractual privity whatsoever. Unquestionably, a construction lender's financial interest can be severely and adversely impacted by the availability of a stop notice remedy for unpaid laborers and materialmen. A claimant's right to serve and enforce a stop notice can have the ultimate consequence of impairing if not destroying the lender's profit from the project, and possibly its investment as well. (See, e.g., Ilyin, *Stop Notice!-Construction Loan Officer's Nightmare* (1964) 16

Hastings L.J. 187, 191-194.)[12] Given such a serious financial impact on a construction lender, what policy reasons exist which would justify the enforcement of stop notice claims where the lender had no reasonable notice or expectation that such a claim could be asserted? We can conceive of none. Fuji Bank agreed to loan money to finance a Hawaiian construction project. Its loan was no doubt secured by a trust deed or mortgage on Hawaiian land. It had every reasonable expectation that its rights and obligations in the matter would be governed by Hawaii law; and that any mechanic's lien rights which might impact its security interest would be governed by Hawaii, not California law.[13] Since Hawaiian law apparently makes no provision for stop notice remedies, we see no reason why Fuji Bank should have had any expectation that such a notice might be served and enforced by unpaid subcontractors, laborers or materialmen involved in this project. The imposition of the stop notice remedy on Hawaiian construction projects should be the province of the Hawaii Legislature, not a California court.

Thus, we believe it would be both unreasonable and unfair to impose upon the parties to a Hawaiian transaction the burdens of California's integrated statutory scheme designed to protect California subcontractors, laborers and materialmen. To hold otherwise could well present Hawaiian subcontractors, laborers and materialmen with a windfall which they had no reason or right to expect and for which no party had bargained. Moreover, if we were to adopt plaintiff's argument and impose this burden on California lenders, we might well discourage their participation in any future Hawaiian building projects, all to the detriment of the Hawaiian economy but with no apparent benefit to California's economy or vindication of any significant California interest; indeed, such an additional burden imposed on California lenders might well result in an increase in California borrowing costs.

### 4. *Defendant Is Entitled to the Statutory Attorney Fee Award*

■ Fuji Bank claims it is entitled to an award of attorney fees for the successful defense of this action. It claims that such award is authorized by section 3176. That section states: "In *any* action against . . . [a] construction lender to enforce payment of a claim stated in a bonded stop notice, *the prevailing party* shall be entitled to collect *from the party held liable by the*

---

[12]However, a recent amendment to section 3159 (Stats. 1994, ch. 782, § 1) appears to have mitigated this risk.

[13]We note that plaintiff, in its trial court opposition to Fuji Bank's demurrer, conceded that it has no right to the benefit of a California mechanic's lien on a Hawaiian project.

*court for payment of the claim*, reasonable attorney's fees in addition to other costs and in addition to any liability for damages. [¶] The court . . . shall determine who is the prevailing party for purposes of this section, whether or not the suit proceeds to final judgment. Except as otherwise provided by this section, the prevailing party shall be the party who recovered a greater relief in the action. . . ." (Italics added.)

To describe this statutory language as confusing and ambiguous would not be inappropriate. At first reading, it seems to indicate that the only party who could be held liable for fees is the owner or construction lender since they are the only parties who, in normal anticipation, would be "held liable by the court for the payment of the claim." However, it cannot be denied that a subcontractor, such as plaintiff, who is unsuccessful in the prosecution of a stop notice enforcement action is, in actual effect, "liable" for payment of the claim in the sense that the amount of the claim becomes a loss which must be absorbed. Moreover, section 3176 also provides that a "prevailing party" will be entitled to fees and that the court may, upon a noticed motion by *a party*, determine "who is the prevailing party for purposes of this section." The prevailing party is then generally defined as the party "who recovered a greater relief in the action." Reading section 3176 as a whole, as we are required to do, and remembering the need to avoid an absurd result (*Looney* v. *Superior Court* (1993) 16 Cal.App.4th 521, 531 [20 Cal.Rptr.2d 182]), we can only come to the commonsense conclusion, that the Legislature intended that either party could be a prevailing party. Thus, a construction lender who successfully defends a suit on an invalid stop notice claim can legitimately claim to have recovered "a greater relief" and is a prevailing party entitled to receive its attorney fees.

Here, there was "an action" "against a construction lender" on a "bonded stop notice" in which the construction lender was clearly the "prevailing party." Under the statute, Fuji Bank is entitled to its attorney fees. That plaintiff did not have a legal right to claim the benefit of the stop notice provisions is irrelevant. We need not be concerned as to why the stop notice claim was invalid; it is only necessary for Fuji Bank to have shown that it defeated the claim. Such invalidity will not bar fees to which a prevailing party is otherwise entitled.[14]

---

[14]In a different but analogous context, courts have sustained a right to recover attorney fees under section 1717, even though the contract which contained the relevant attorney fee clause was found to be invalid or unenforceable. (*Jones* v. *Drain* (1983) 149 Cal.App.3d 484, 490 [196 Cal.Rptr. 827]; *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 707 [126 Cal.Rptr. 761].)

## DISPOSITION

The judgment is affirmed. Fuji Bank shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.