Filed 10/31/24  Silva v. Agens CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANNE SILVA,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>DANA VERRO AGENS,<br><br>　　　Defendant and Appellant. | B318916<br>c/w B325201<br><br>(Los Angeles County<br>Super. Ct. Nos. 20STCV28776;<br>BV033830; BV033648) |

　　　APPEAL from a judgment of the Los Angeles Superior Court, Michael L. Stern, Judge.  Affirmed in part, reversed in part, and remanded with directions.

　　　Campbell & Farahani, Frances M. Campbell and Nima Farahani for Plaintiff and Appellant.

　　　Delman Vukmanovic, Dana Delman, Law Office of Tarik S. Adlai, Tarik S. Adlai for Defendant and Appellant.

_____

Anne Silva appeals from a judgment following an order dismissing her complaint for fraudulent eviction, fraud, negligent representation and violation of Civil Code section 1947.10[1] against her former landlord, Dana Agens.  Agens, in turn, appeals the trial court's denial of his motion for attorney fees as the "prevailing party" under section 1947.10 and for Silva's refusals to make discovery admissions.  We affirm the judgment and the trial court's denial of fees incurred by Silva's refusal to make discovery admissions, but we reverse and remand for further consideration the trial court's denial of attorney fees under section 1947.10, subdivision (a).

I.      FACTUAL AND PROCEDURAL BACKGROUND
       **A. The Parties and Their Dispute**

In 2001 Agens purchased a single-family home in Los Angeles and occupied it as his primary residence.  In 2010, he relocated to Ukiah, where he had purchased another property he intended to develop as a farm.  Agens listed the Los Angeles house for rent and, in April of 2010, leased it to Silva.  Thereafter, Silva and Agens executed a series of one-year leases.  All of the leases were for the entire residence, but by informal arrangement, Agens retained control of the basement, using it to store personal property and as a place to sleep during his occasional visits to Los Angeles.

In March of 2019, Agens informed Silva that he would be returning to Los Angeles and planned to move into his house when Silva's then-current lease ended in December of that year.  Although Silva initially expressed displeasure and requested additional time to relocate, Agens reminded her that he had told

---

[1]      All subsequent statutory references are to the Civil Code unless otherwise indicated.

her for some months that he intended to return to Los Angeles. On March 31, 2019, Silva sent a message to Agens apologizing for "snapping" at him and thanking him for "such a long heads up."

Silva moved out on December 31, 2019, and Agens returned to Los Angeles on January 4, 2020. When he arrived, he found that Silva had left the house in poor condition. Silva denied leaving the house in poor condition, but eventually told Agens he could take "what you need to take out of the deposit" to pay for repairs. On March 2, 2020, Agens sent Silva a four-page letter listing the damage she had left behind, and providing estimates for over $11,000 in repairs.

Agens stayed in an upstairs bedroom at the house for a few days, but ultimately moved to the basement because of dust and fumes from the repair work. As awareness of the COVID pandemic increased, Agens began to reconsider staying in Los Angeles. On March 15, 2020, Agens left Los Angeles and returned to Ukiah. In April of 2020 he signed a lease with a new tenant. In March of 2021 Agens was fully vaccinated against COVID. Agens informed his new tenant that he would be moving into his house, and has lived there continuously since April of 2021.

In the meantime, Silva learned that Agens had listed the house for rent. Agens acknowledged listing the house, informing Silva that he would not consider leasing the house to her because of the damage she had caused during her initial tenancy.

**B. Silva's Lawsuit Against Agens for Fraud and Wrongful Eviction**

On July 30, 2020, Silva filed suit against Agens, alleging causes of action for violating Los Angeles's rent stabilization ordinance (RSO), fraud, misrepresentation, and wrongful eviction

3

under section 1947.10, subdivision (a). Silva alleged that Agens misrepresented his intention to move from Ukiah to Los Angeles as a means to evict her from the home in order to lease it to a new tenant at a higher rent, and that, because the basement was a "separate dwelling unit," the house was covered by Los Angeles's RSO. Alleging she was "wrongfully deprived" of a "rent stabilized tenancy," Silva sought damages, including treble damages available to wronged tenants under section 1947.10, punitive damages, costs and attorney fees. Agens filed a general denial and a cross-complaint for damages.

### B. Agens's Motion for Summary Judgment

On July 2, 2021, Agens filed a motion for summary judgment or, in the alternative, summary adjudication, arguing first, that his house was a single dwelling unit and therefore excluded from Los Angeles's RSO, and second, that he had not misrepresented his intentions to Silva. Agens's supporting declaration set out the history of his landlord-tenant relationship with Silva, his plans to move back to Los Angeles, the condition in which he found his house when he returned, and how his growing concerns about COVID prompted his return to Ukiah in March of 2020. He attached copies of his most recent lease to Silva, his text messages and correspondence with her, and photographs comparing the condition of the house when he leased it to Silva and its condition when he returned in January of 2020. He also attached declarations from several friends, corroborating his intention to return to Los Angeles.

Silva's opposition argued the basement was a separate dwelling unit because, inter alia, it had a refrigerator, a microwave, and a full bathroom. Silva also disputed Agens's declared intention to return to Los Angeles, attaching excerpts

4

from his deposition showing he had not changed his voter registration, found new medical providers, or purchased furniture for the house. Silva also submitted extensive objections to the declarations of Agens's friends.

**C. The Order Granting Summary Judgment**

On September 17, 2021, the trial court granted Agens's summary judgment motion, finding Agens's house comprised a single dwelling unit and was therefore not covered by the RSO and that even if the RSO applied, Silva had not shown fraud or misrepresentation by Agens, rendering all of Silva's claims lacking in viability. The trial court sustained many of Silva's evidentiary objections, but admitted those portions of Agens's supporting declarations corroborating Agens's stated intention to move back to Los Angeles. The trial court ordered Agens, as the prevailing party, to submit a motion for attorney fees. Finally, the trial court severed Agens's cross-complaint for damages and ordered it transferred to a limited jurisdiction court.

**D. The Order Denying Attorney Fees**

On November 18, 2021, Agens filed a motion for an award of attorney fees, under Code of Civil Procedure section 2033.420, subdivision (b) (based on fees incurred as a result of Silva's refusal to admit facts in discovery) and section 1947.10, subdivision (a), which provides an award of attorney fees to the "prevailing party" in a wrongful eviction action. Silva's opposition argued good cause supported her refusal to make admissions in discovery and Agens was not the prevailing party under section 1947.10.

The trial court denied fees relating to the requests for admissions, agreeing that the requests involved "complicated legal and factual issues that, in this case, remained for

5

determination by the trier of fact." The trial court also denied Agens's request for fees under section 1947.10, finding that, notwithstanding the statutory language that reads "[t]he prevailing party shall be awarded attorney's fees and costs," the statute was "ambiguous" and "the intent of the [statute] appears to be that the attorneys' fee provision is for a successful tenant only."

Silva filed a notice of appeal from the judgment following the order granting Agens's motion. Agens filed a separate appeal from the order denying his motion for attorney fees. These appeals have been consolidated.

## II.  DISCUSSION

We find no error in the trial court's grant of summary judgment or its denial of attorney fees based on Silva's refusal to make admissions in discovery. The trial court did, however, erroneously construe the plain language of section 1947.10 as applying exclusively to prevailing tenants.

### A. The Trial Court Committed No Error in Granting Summary Judgment

### 1. Standard of Review and General Principles

We apply a de novo standard of review to the trial court's order granting summary judgment, "considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained," "liberally constru[ing] the evidence in support of the party opposing summary judgment," and "resolv[ing] doubts concerning the evidence in favor of that party." (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 389.) As with any appeal, we presume the order appealed from is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, " '[o]n review of a summary judgment, the appellant has

6

the burden of showing error, even if he did not bear the burden in the trial court.' " (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379.)

Summary judgment is proper where a cause of action has no merit, meaning that "one or more of the elements of the cause of action cannot be separately established." (Code Civ. Proc., § 437c, subd. (o)(1).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

**2. The Trial Court Correctly Determined the Property Was Not Subject to Los Angeles's RSO**

We agree with the trial court that, as a threshold matter, the property was not subject to the RSO. The RSO regulates "rental units," and specifically excludes "[d]wellings, one family" (Los Angeles Mun. Code, § 151.02), which are defined as a "group of two or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes." (Los Angeles Mun. Code, § 12.03.)

All of the evidence was that the basement was connected to the main house and was never offered, used, or intended to serve as a separate residence or dwelling unit. The evidence was uncontroverted that Agens used the basement space to store his belongings and, on his occasional visits to Los Angeles, as a place to sleep. We further observe that although Silva emphasized the placement of a microwave and refrigerator in the basement, she never introduced evidence that the basement was comprised of "two or more rooms" (not including the bathroom, which is excluded from the definition of habitable room under Los Angeles

7

Municipal code section 12.03) as required for a separate dwelling unit under the Los Angeles Municipal Code, nor did she challenge Agens's evidence that the basement was never permitted, offered, or used for separate occupancy.  Indeed, during the entire nine-year period of Silva and Agens's landlord-tenant relationship, there were never any tenants or renters other than Silva, and the lease was for the entire property (including the basement).  It was only through  informal agreement that Agens retained access to the basement for storage and for his temporary stays when he visited Los Angeles during Silva's tenancy.  Because there was no triable issue on whether or not the property was subject to the RSO, summary judgment was proper.  (*ABCO, LLC v. Eversley* (2013) 213 Cal.App.4th 1092, 1100.)

> **3.  Even Assuming the Property Were Subject to the RSO, and Taking Silva's Evidence As True, There Was Insufficient Evidence to Demonstrate Bad Faith or Fraud**

We also agree with the trial court's assessment that all of Silva's claims are predicated on her allegation that Agens intentionally or negligently misrepresented his plan to return to Los Angeles and occupy his house as a means to evict Silva in bad faith.

Silva offered no evidence that Agens's March 2019 statement to her regarding his intention to return to Los Angeles at the end of the 2019 calendar year and occupy the house by January 2020 was false when it was made.  Agens's actions nearly a full year later, at the beginning of the COVID pandemic, are insufficient to raise a triable issue as to the truthfulness of his statement to Silva in March of 2019.  " '[T]he truth of a statement as to a person's intention depends on his intention at

8

the time that the statement is made and is not affected if he subsequently, for any reason, changes his mind.' " (*Edmunds v. Valley Circle Estates* (1993) 16 Cal.App.4th 1290, 1300.)

Silva offered no evidence to support even an inference that Agens's March 2019 representation was false when it was made. To the contrary, Silva did not dispute that Agens actually moved from Ukiah to Los Angeles, and that he moved into the house after arriving on January 4, 2020. Thus, Silva concedes that, at least initially, Agens acted in conformance with his stated intention to move to Los Angeles and occupy his house. And, while Silva alleges in her complaint that Agens's true motive was to evict her so he could lease the house to new tenants at a higher monthly rent, that assertion does not appear in her separate statement opposing Agens's motion – not even as one of Silva's proffered "undisputed facts."

Silva's argument that the trial court could infer fraud because Agens only remained in the house for a short time is unavailing and, critically, ignores two extenuating and unchallenged factors. When Agens returned to the house he found not merely cosmetic damage, but damage extending to major appliances on which Agens would necessarily depend to live in his house. Silva denies responsibility,[2] but she does not deny that the house was damaged or that appliances were broken. The second extenuating factor is the COVID pandemic,

[2] Although Silva denied, in her separate statement opposing Agens's motion for summary judgment, that she "cause[d] damage to the house," her opposing separate statement cites no supporting evidence for this assertion. Thus, we may disregard it. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [" 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*.' "].)

which became a matter of public knowledge and concern at precisely the time Agens left Los Angeles and returned to a rural setting. Again, Silva does not dispute that the timing of Agens's departure from Los Angeles coincided with the pandemic or that Agens later moved back to Los Angeles in 2021 after being vaccinated for COVID, nor does she dispute that Agens has continuously lived in his house since that time. In sum, the evidence is fully consistent with Agens's statements that, in March 2019, his intention was to resume residency in Los Angeles by the end of that year and all of Agens's subsequent actions are consistent with those intentions.

**B. The Trial Court Did Not Abuse Its Discretion in Admitting Evidence**

Silva argues the trial court abused its discretion by accepting declarations corroborating Agens's intention to move back to Los Angeles. We review decisions regarding admission of evidence for abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) We must also consider Evidence Code section 353, which provides that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . [¶] (b) the court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."[3]

---

[3] Article VI, section 13 of our state's Constitution provides in relevant part that, "No judgment shall be set aside, . . . in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, . . . unless, after an

We find neither an abuse of discretion nor a miscarriage of justice. The trial court admitted the declarations in question under Evidence Code section 1250, which provides an exception to the hearsay rule for statements "of the declarant's then existing state of mind . . . (including a statement of intent, plan, motive, [or] design . . .) . . . ." The trial court acted within its discretion to admit the declarations of Agens's friends for the limited purpose of corroborating his stated intentions as of March 2019.

**C.  The Trial Court Properly Denied Cost-of-Proof Fees But Erroneously Construed Section 1947.10 subdivision (a)**

**1. Standard of Review**

Although an order granting or denying an award of attorney fees is ordinarily reviewed for abuse of discretion (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319), independent or de novo review is warranted when, as here, the "determination of whether the criteria for an award of attorney fees . . . have been satisfied amounts to statutory construction and a question of law" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; accord, *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 252).

**2.  The Trial Court Acted Within Its Discretion in Declining to Award Fees Based on Silva's Refusal to Make Discovery Admissions**

We find no abuse of discretion in the court's refusal to

---

examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

11

award cost-of-proof expenses. As Silva points out, the applicability of the RSO was an issue of law requiring judicial determination. Nor do we find any abuse of discretion in the court's refusal to award attorney fees based on Silva's refusal to admit facts regarding Agens's state of mind. For example, request number 8 asked Silva to admit Agens "intended to occupy the [house] as a primary residence" after Silva's tenancy ended, while request number 9 asked for an admission that Agens "acted in good faith in recovering possession of the [house]." Agens's state of mind is not something Silva could know or reasonably investigate.

It was within the court's discretion to deny Agens the legal fees he incurred to prove these facts.

### 3. Agens Was Entitled to Attorney Fees As a "Prevailing Party"

Applying a de novo standard, we conclude the trial court erred when it interpreted section 1947.10, subdivision (a), to exclude an award of fees to a prevailing landlord. " ' "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.]" ' " (*Morin v. ABA Recovery Service, Inc.* (1987) 195 Cal.App.3d 200, 205, disapproved on another ground in *Lakin v Watkins Associated Industries* (1993) 6 Cal.4th 644.) "In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.]" (*People v. Black* (1982) 32 Cal.3d 1, 5.) "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (*People v. Overstreet* (1986) 42 Cal.3d 891, 895.) The language of section 1947.10, subdivision (a) awarding attorney fees to a "prevailing party" is unambiguous,

and the trial court erred by looking outside the plain language to conclude that a prevailing landlord was ineligible for an award of attorney fees.

It is well settled that the Legislature "knows how to write both unilateral fee statutes, which afford fees to either plaintiffs or defendants, and bilateral fee statutes, which may afford fees to both plaintiffs and defendants." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1046.) "When the Legislature intends that the successful side shall recover its attorney's fees no matter who brought the legal proceeding, it typically uses the term 'prevailing party.' [Citations.] On the other hand, when the Legislature desires to authorize the award of fees only to one side or the other, it signals that intent by using such terms as 'plaintiff' [citations] or 'defendant' [citations]." (*Stirling v. Agricultural Labor Relations Board* (1987) 189 Cal.App.3d 1305, 1311.) Moreover, Agens is entitled to recover attorney fees under section 1947.10, subdivision (a), even though he prevailed by showing the underlying RSO does not apply to his rental property. "[T]he enactment of a prevailing party attorney fee provision generally reflects a legislative intent to adopt a broad, reciprocal attorney fee policy that will, as a practical and realistic matter, provide a full mutuality of remedy to plaintiffs and defendants alike." (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1145.) There, a statute awarded attorney fees to the prevailing party in an action to "enforce" governing documents of a common interest development, and the defendant prevailed by showing no governing documents exist. The Court of Appeal reversed a fee award in favor of the defendant. The Supreme Court reinstated the fee award, holding the statute could not be construed to deny fees to a defendant in an action

13

where "the plaintiffs would have obtained attorney fees had they prevailed in their claim, but the defendants would be denied attorney fees because they defeated the plaintiffs' action by showing that no common interest development exists." (*Id.* at p. 1146; see also *Mechanical Wholesale Corp. v. Fuji Bank, Ltd.* (1996) 42 Cal.App.4th 1647, 1661, fn. 14 [statute awarded fees to prevailing party in action to enforce bonded stop notice; defendant who prevailed by showing no stop notice was issued was entitled to statutory attorney fees].)

Silva's argument that Agens merely secured a "dismissal" of the claims against him is belied by the record. Agens prevailed on a motion for summary judgment as to all four claims for relief brought by Silva. Agens unquestionably won on the merits, and is the "prevailing party" for purposes of a fee award under section 1947.10, subdivision (a).[4]

---

[4] We further note that the parties did not challenge the applicability of section 1947.10 and we deem that issue waived.

**DISPOSITION**

We affirm the summary judgment in favor of Agens, as well as that portion of the order denying Agens's motion for costs of proof related to his requests for admissions.  We reverse the order denying Agens attorney fees as the "prevailing party" on Silva's fourth cause of action for wrongful eviction and remand to the trial court to determine a fee award (if any) under section 1947.10, subdivision (a).  The parties are to bear their own costs on appeal.


DAVIS, J.*


I CONCUR:



MOOR, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

Anne Silva v. Dana Agens
B318916


BAKER, Acting P. J., Concurring in Part and Dissenting in Part


I join Part I, Part II.A.1, Part II.A.2, and Part II.C.2 of the opinion for the court.  Civil Code section 1947.10 has no application in this case because the tenancy in question is not subject to the Los Angeles Rent Stabilization Ordinance.  Because the predicate for application of Civil Code section 1947.10 (a rent-controlled tenancy) does not exist, I believe there is no basis to award attorney fees under the statute.



BAKER, Acting P. J.