Filed 3/5/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| TRACT 19051 HOMEOWNERS ASSOCIATION et al., | ) ) ) | |
| Plaintiffs and Appellants, | ) ) ) | S211596 |
| v. | ) ) | Ct.App. 2/4 B235015 |
| MAURICE KEMP et al., | ) ) | Los Angeles County |
| Defendants and Respondents. | ) ) | Super. Ct. No. BC398978 |
| _____ | ) | |

The issue before us in this case is the validity of an attorney fee award granted in favor of defendant homeowners under former section 1354, subdivision (c), of the Civil Code, a provision of the Davis-Stirling Common Interest Development Act (hereafter the CID Act).[1] The CID Act applies to

---

[1] In 2012, subsequent to all of the lower court proceedings in this matter, the CID Act was recodified. The former provisions of the Civil Code were repealed and reenacted as new sections of the Civil Code. (Stats. 2012, ch. 180, §§ 1-3, operative Jan. 1, 2014; see generally Recommendation: Statutory Clarification and Simplification of CID Law (Feb. 2011) 40 Cal. Law Revision Com. Rep. (2010) p. 235.) The specific provision at issue in this case — former section 1354, subdivision (c) — was repealed and reenacted without change as section 5975, subdivision (c).

Because the former provisions of the CID Act are cited in the lower court opinions and briefing in this matter, to minimize confusion this opinion generally will refer to the relevant provisions of the act by their former section numbers. Former section 1354, subdivision (c) — the specific statute at issue here — will generally be referred to as former section 1354(c).

*(footnote continued on next page)*

1

various types of development projects, but a common interest development for purposes of the act requires a project with a common area.  (See 9 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 25B:1, pp. 25B-6 to 25B-7.)  Former section 1354(c) — the attorney fee statute at issue here — provided in full:  "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."  (Added by Stats. 2004, ch. 754, § 1, p. 5838.)  The term "governing documents," in turn, was defined in former section 1351, subdivision (j) (as amended by Stats. 2002, ch. 1111, § 1, pp. 7117-7118, now § 4150) to mean the official documents governing "the operation of [a] common interest development."

The underlying lawsuit in this matter was filed by the Tract 19051 Homeowners Association and a number of individual members of the association (hereafter plaintiffs) against defendant homeowner Maurice Kemp.  Plaintiffs' first amended complaint alleged that their housing development tract No. 19051 (Tract 19051) — which included Kemp's property — is a common interest development within the meaning of the CID Act.  It further alleged that, pursuant to that act, there were valid restrictions applicable to defendant Kemp's property that were violated by his ongoing remodeling.  The trial court ultimately concluded that plaintiffs failed to establish that Tract 19051 constitutes a common interest development within the meaning of the CID Act and rendered judgment in favor of defendant Kemp and defendant Eric Yeldell, a subsequent purchaser of Kemp's property who had been permitted to intervene as a defendant in the action.

---

*(footnote continued from previous page)*

In addition, unless otherwise specified, all statutory references are to the Civil Code.

As part of the judgment, the trial court awarded defendants attorney fees under former section 1354(c).

The Court of Appeal affirmed the trial court's judgment in favor of defendants on the merits, agreeing that plaintiffs had failed to prove that Tract 19051 satisfies the requirements of a common interest development, but the appellate court reversed the trial court's award of attorney fees to defendants. Relying upon the prior Court of Appeal decision in *Mount Olympus Property Owners Assn. v. Shpirt* (1997) 59 Cal.App.4th 885, 895-896 (*Mount Olympus*), the Court of Appeal concluded that because both it and the trial court had found that the CID Act was not applicable, the trial court had erred in awarding attorney fees under former section 1354(c), a provision of that act.

Defendants sought review of the attorney fee issue in this court, contending that the Court of Appeal's conclusion was not supported by the language of the applicable statute or by the Legislature's intent to adopt a reciprocal attorney fee provision. We granted review to resolve the issue.

For the reasons discussed hereafter, we conclude that the Court of Appeal erred in reversing the attorney fee award in favor of defendants. First, the trial court's award of attorney fees is supported by the language of the statute: Plaintiffs' underlying lawsuit was an action to enforce the governing documents of a common interest development, and defendants were the prevailing party in the action. Second, because *plaintiffs* clearly would have been entitled to an award under the statute had *they* prevailed in the action, denying *defendants* an award under the statute when *they* were the prevailing party would unquestionably violate the reciprocal nature of the statute and thus defeat the evident legislative intent underlying the statute. As we shall explain, prior California decisions, interpreting and applying comparable statutory attorney fee provisions that mandate an award of attorney fees to the prevailing party, directly support this

3

interpretation of former section 1354(c).  Finally, the Court of Appeal decision in *Mount Olympus*, *supra*, 59 Cal.App.4th 885, upon which the Court of Appeal in this case relied in reaching a contrary result, is clearly distinguishable from the present case.

Accordingly, we reverse the judgment of the Court of Appeal insofar as it reversed the attorney fee award in favor of defendants.

### I.  Facts and Lower Court Proceedings

Tract 19051 is a housing development comprised of 94 single-family homes in the Baldwin Vista area of Los Angeles.  A voluntary homeowners association — known variously as the Tract 19051 Homeowners Association or the Cloverdale, Terraza, Stillwater, Weatherford Homeowners Association — is open to homeowners whose homes are within, or in the immediate vicinity of, Tract 19051.

When Tract 19051 was subdivided in 1958, the developer recorded the declaration of restrictions (hereafter referred to as the declaration) that contained the restrictions at issue in the underlying lawsuit.  The declaration allowed any homeowner to sue to enforce its restrictions, but the original declaration, by its own terms, expired on January 1, 2000, and contained no provision for extending that date.

In 2006, defendant Maurice Kemp acquired lot No. 22 of Tract 19051, which contained a one-story residence that Kemp substantially demolished in order to build a much larger 7,000 square-foot two-story home.  After Kemp began construction, a neighbor's attorney informed Kemp that the remodeling project was in violation of height and setback restrictions contained in the declaration.

In September 2008, plaintiffs filed the underlying lawsuit against Kemp, alleging breach of the declaration and seeking injunctive and declaratory relief; the

first amended complaint explicitly alleged that Tract 19051 is a common interest development and claimed that plaintiffs were entitled to an award of attorney fees under former section 1354(c). In response, defendant argued that the declaration had expired by its own terms on January 1, 2000. Plaintiffs rejoined by maintaining that, under the terms of the CID Act, the termination date of the declaration had been extended to December 31, 2010, by a majority vote of the homeowners that occurred in December 1999. (See former § 1357, subd. (b), added by Stats. 1985, ch. 874, § 14, p. 2780, now §§ 4265, 4270 [when the declaration *of a common interest development* does not provide a means for the property owners to extend the term of the declaration, the term may be extended by a majority of members].) With regard to a development that does not qualify as a common interest development, a declaration of restrictions may be extended only by the unanimous vote of 100 percent of the property owners or by a vote of a lesser number of owners as provided in the declaration of restrictions. (See 8 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 24:41, pp. 24-137 to 24-138 & fn. 9 [citing cases].) It is undisputed that neither of the latter two methods was satisfied here.

In denying a preliminary injunction sought by plaintiffs, the trial court found that the December 1999 vote by a majority of the Tract 19051 homeowners was not effective to extend the date of the declaration because "Tract 19051 is not a common interest development . . . . Tract 19051 is a tract of individually owned single family residences that border upon streets that are dedicated to the public and are not owned in common by the homeowners or by the homeowners' association."

When the case ultimately was ready for trial, however, Kemp was on the verge of losing his property to foreclosure and did not appear in court. The trial court initially entered an interlocutory judgment for plaintiffs and granted them

5

attorney fees and costs under former section 1354(c), but reserved final judgment until plaintiffs provided proof that the declaration had been properly extended under the CID Act. Meanwhile, a new homeowner, Eric Yeldell, purchased Kemp's home at a trustee's sale and was granted permission to intervene as a defendant in the ongoing lawsuit. After further briefing and argument on additional questions relating to Tract 19051's status as a common interest development, the trial court found that plaintiffs had failed to establish that Tract 19051 is a common interest development and consequently that plaintiffs' attempt to extend the declaration through the process authorized under the CID Act was unsuccessful. The trial court vacated the interlocutory judgment in favor of plaintiffs, entered judgment for defendants, and awarded defendants attorney fees under former section 1354(c).

The Court of Appeal agreed with the trial court's conclusion that plaintiffs had failed to establish that Tract 19051 was a common interest development within the meaning of the CID Act and consequently that the restrictions imposed by Tract 19051's original declaration had not been extended by virtue of the procedure authorized by the CID Act. Accordingly, the Court of Appeal affirmed the trial court's judgment in favor of defendants on the merits.

With regard to the trial court's award of attorney fees in favor of defendants, however, the Court of Appeal reversed. In reaching this conclusion, the Court of Appeal stated in full: "In *Mount Olympus*, *supra*, 59 Cal.App.4th at pages 895-896, we found that because the [CID] Act did not apply, the trial court had erred in awarding attorney fees under section 1354. (See 12 Miller & Starr, Cal. Real Estate (3d. ed. 2008) § 34:66, p. 34-229 ['If the property described in the restrictions is not a "common interest development," this provision for the award of fees does not apply.'].) Because the same rationale applies to this case, the attorney fee award under section 1354 must be reversed."

6

Defendants petitioned for review of the Court of Appeal's determination regarding the attorney fee award, and we granted review limited to that issue. Accordingly, we accept the lower courts' determinations that Tract 19051 is not a common interest development within the meaning of the CID Act.

**II. When a defendant homeowner prevails in an action to enforce the governing documents of an asserted common interest development by showing that the subdivision is not a common interest development, is the defendant homeowner entitled to attorney fees under former section 1354(c) (now section 5975, subdivision (c))?**

With regard to an award of attorney fees in litigation, California generally follows what is commonly referred to as the American Rule, which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. (See, e.g., *Trope v. Katz* (1995) 11 Cal.4th 274, 278.) The American Rule is codified in Code of Civil Procedure section 1021, which states in relevant part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."[2]

As contemplated by the initial clause of Code of Civil Procedure section 1021, the Legislature has established a variety of exceptions to the American Rule by enacting numerous statutes that authorize or mandate an award of attorney fees in designated circumstances. (See generally 7 Witkin, Cal. Procedure (5th ed.

---

[2] In addition to statutory attorney fee provisions, this court, relying upon its inherent equitable authority, has recognized three additional exceptions to the American Rule — the common fund, substantial benefit, and private attorney general doctrines — under which attorney fees may also be recovered. (See generally *Serrano v. Priest* (1977) 20 Cal.3d 25, 34-47.) The private attorney general attorney fee doctrine has subsequently been substantially codified in Code of Civil Procedure section 1021.5.

2008) Judgment, §§ 210-238, pp. 772-811 [discussing numerous examples of statutory provisions authorizing attorney fee awards].)

Former section 1354(c) — the provision at issue here — is one of the legislatively created attorney fee provisions. As noted above, former section 1354(c), a provision of the CID Act, read in full: "In an action to enforce the governing documents [of a common interest development], the prevailing party shall be awarded reasonable attorney's fees and costs." (Stats. 2004, ch. 754, § 1, p. 5838.)[3] The parties disagree as to the meaning and proper application of this provision in a case in which it is ultimately determined that no common interest development exists.

The general principles that guide a court in determining the meaning and scope of a statutory provision are well established. As we explained in *People v. Cornett* (2012) 53 Cal.4th 1261, 1265: " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so

---

[3] The term "governing documents" as used in former section 1354(c) was defined in former section 1351, subdivision (j) (as amended by Stats. 2002, ch. 1111, § 1, pp. 7117-7118, now § 4150) to mean "the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association."

Former section 1354 read in full: "(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.

"(b) A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association.

"(c) In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 1354, as added by Stats. 2004, ch. 754, § 1, p. 5838.)

as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.] If, however, 'the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' "

In this case, each of the parties contends that the plain meaning of the statutory language supports its interpretation of the statute. To repeat, the applicable statute reads in full: "In an action to enforce the governing documents [of a common interest development], the prevailing party shall be awarded reasonable attorney's fees and costs." (Former § 1354(c), now § 5975, subd. (c).)

Plaintiffs contend that even when an action is brought to enforce what the complaint expressly alleges is a governing document of a common interest development, if it is ultimately determined in the course of the litigation that a common interest development does not exist, the action cannot properly be found to be "an action to enforce the governing documents" of a common interest development within the meaning of former section 1354(c). Plaintiffs assert in this regard: "In order for [former] section 1354(c) to apply, there must be an action to 'enforce' governing documents. This necessarily means that there must be valid 'governing documents' that are compliant with the Davis-Stirling Act to be 'enforced' in the first instance. Otherwise, the Act never applies, and the general rule that fees are not recoverable controls. . . . If there is nothing to enforce, then there can be no action to enforce."

9

Defendants, in contrast, contend that the plain language of the statute supports their position. Defendants maintain that because the statute says that "the prevailing party" is entitled to recover attorney fees, the statute must be interpreted to be reciprocal, and "[r]ecovery is hinged solely on the basis of plaintiff's action, not whether a court ultimately determines that a subdivision is a common interest development." "[Plaintiffs] filed this action to enforce the governing documents . . . . Thus, the reciprocal, mandatory fee-shifting should kick in, whether [plaintiffs or defendants] prevailed."

Focusing on the plain language of former section 1354(c), we conclude that defendants have the stronger argument. When a lawsuit is brought to enforce what the complaint expressly alleges are the governing documents of a common interest development, the action would ordinarily be understood to be "an action to enforce the governing documents [of a common interest development]" as that clause is used in former section 1354(c). Whether or not the plaintiff in the action is ultimately successful in establishing that the documents relied upon are in fact the governing documents of a common interest development would not affect the character or type of action that has been brought.

Moreover, even if the language of former section 1354(c) is viewed as potentially ambiguous in this regard, as we explain the additional factors discussed hereafter, taken as a whole, clearly support defendants' contention that they were properly awarded attorney fees in this case under former section 1354(c).

The legislative history of former section 1354(c) makes it clear that the Legislature has long intended to provide for an attorney fee award to the "prevailing party" in actions covered by the statute. Although the initial version of former section 1354 in the original CID Act enacted in 1985 did not contain an attorney fee provision (Stats. 1985, ch. 874, § 14, p. 2777), when the statute was first amended in 1990 the following sentence was added to former section 1354:

10

"In any action to enforce the declaration, *the prevailing party* shall be awarded reasonable attorney's fees and costs." (Stats. 1990, ch. 1517, § 3, p. 7108, italics added.) In 1993, the attorney fee provision (still providing for recovery by "the prevailing party") was expanded and moved to former section 1354, subdivision (f). (Stats. 1993, ch. 303, § 1, p. 2053.) Then, in 2004, in a substantial revision of the CID Act, the attorney fee provision in question was moved from former section 1354, subdivision (f), to former section 1354(c). (Stats. 2004, ch. 754, § 1, pp. 5838-5839.) The 2004 amendment embodied the identical language that remained in effect at the time of the trial court's order in this case. As noted above (*ante*, p. 1, fn. 1), as a result of the 2012 recodification of the CID Act, the identical language now appears in section 5975, subdivision (c).

Plaintiffs claim that the 2004 amendment that moved the attorney fee provision from former section 1354, subdivision (f) to former section 1354(c) worked a substantive, narrowing change in the statute because the language of section 1354, subdivision (f) that provided "[i]n *any* action to enforce the governing documents" was changed to "[i]n *an* action to enforce the governing documents . . . ." We are aware of no authority, however, to support the claim that in this context the two phrases ("any action" and "an action") are reasonably interpreted to have different meanings, and other attorney fee statutes use the terms interchangeably. (See, e.g., Lab. Code, § 218.5.) Furthermore, plaintiffs' contention is directly contradicted by the report of the California Law Revision Commission that proposed the changes embodied in the 2004 amendment. With respect to the change in question, the report stated that "the first sentence of former subdivision (f) is continued *without substantive change* in subdivision (c)." (Recommendation: Alternative Dispute Resolution in Common Interest Developments (Sept. 2003) 33 Cal. Law Revision Com. Rep. (2003) p. 711, italics added.)

Thus, throughout its history, the attorney fee provision of the CID Act has provided for an award of attorney fees to the "prevailing party."

As this court noted in *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1046: "The Legislature knows how to write both unilateral fee statutes, which afford fees to either plaintiffs or defendants, and bilateral fee statutes, which may afford fees to both plaintiffs and defendants. '*When the Legislature intends that the successful side shall recover its attorney's fees no matter who brought the legal proceeding, it typically uses the term "prevailing party." ' "* (Italics added.)

We have not found anything in the legislative history of former section 1354(c) to indicate that the Legislature specifically considered the scenario in which an action that was brought to enforce the governing documents of a common interest development proved unsuccessful because the trial court determined that no common interest development existed. As described below, however, past California decisions interpreting and applying other prevailing party attorney fee statutes demonstrate that the enactment of a prevailing party attorney fee provision generally reflects a legislative intent to adopt a broad, reciprocal attorney fee policy that will, as a practical and realistic matter, provide a full mutuality of remedy to plaintiffs and defendants alike. (See, e.g., *Santisas v. Goodin* (1998) 17 Cal.4th 599 (*Santisas*); *Hsu v. Abbara* (1995) 9 Cal.4th 863 (*Hsu*); *Mechanical Wholesale Corp. v. Fuji Bank, Ltd.* (1996) 42 Cal.App.4th 1647 (*Mechanical Wholesale*). A statute that limited an award of attorney fees to the prevailing party only to cases in which it is ultimately determined that there are in fact governing documents of a common interest development to be enforced would deny mutuality of remedy to the defendants in any instance, such as the present case, in which the plaintiffs would have obtained attorney fees had they prevailed in their claim, but the defendants would be denied attorney fees because they defeated the plaintiffs' action by showing that no common interest

12

development exists. Had the Legislature intended to deny equal treatment to the defendants in such a common circumstance, one would expect such an intent to be reflected in the legislative history of former section 1354(c). Nothing in the legislative history of the statute suggests, however, that the Legislature intended to deny attorney fees to the prevailing defendants in such an action and plaintiffs do not point to anything that would support such an intent.

As just noted, a long line of California decisions have interpreted other prevailing party attorney fee statutes to permit recovery of attorney fees by a prevailing defendant in situations analogous to the present case. Most of the relevant cases involve the interpretation and application of section 1717, subdivision (a), which provides that "[i]n any action on a contract" containing a provision authorizing one of the parties to the contract to recover attorney fees incurred to enforce the contract, the prevailing party "shall be entitled to reasonable attorney fees" "whether he or she is the party specified in the contract or not."

Section 1717 was at issue in *Hsu*, *supra*, 9 Cal.4th 863, in which the plaintiffs, prospective purchasers of real property, brought suit against the defendant property owners, alleging that the defendants had breached a real estate sales contract that contained an attorney fee provision. The trial court found in favor of the defendants, concluding that the plaintiffs' purported acceptance of the defendants' offer was actually a counteroffer and that no contract had been formed. Although the defendants sought attorney fees under section 1717, the trial court denied their request and, on appeal, the Court of Appeal upheld that denial. (*Hsu*, *supra*, at pp. 869-870.)

On review, this court unanimously reversed the lower courts' denial of attorney fees to the defendants. In the course of our opinion, we explained: "It is now settled that a party is entitled to attorney fees under section 1717 'even when

13

the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' " . . . [¶] This rule serves to effectuate the purpose underlying section 1717. As this court explained, '[s]ection 1717 was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party . . . , and to prevent oppressive use of one-sided attorney's fees provisions. . . .' . . . The statute would fall short of this goal of full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving that they were not parties to the alleged contract or that it was never formed. To achieve its goal, the statute generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu*, *supra*, 9 Cal.4th at pp. 870-871, citations omitted.) *Hsu* was decided in 1995, but several of the cases it cited, as well as other similar cases, predated the enactment of the prevailing party attorney fee provision at issue here. (See *Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 842; *North Associates v. Bell* (1986) 184 Cal.App.3d 860, 865; *Jones v. Drain* (1983) 149 Cal.App.3d 484, 489-490; *Care Constr., Inc. v. Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 707.)

In *Santisas*, *supra*, 17 Cal.4th 599, we reaffirmed the rule set forth in *Hsu*, observing that a prevailing defendant is entitled to attorney fees under section 1717 "when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' . . . To ensure mutuality of remedy in this situation, it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or

14

nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Santisas*, *supra*, 17 Cal. 4th at p. 611.)

The rule reiterated by this court in the *Hsu* and *Santisas* decisions was applied to a different prevailing party attorney fee provision in *Mechanical Wholesale*, *supra*, 42 Cal.App.4th 1647. In *Mechanical Wholesale*, the appellate court was called upon to interpret and apply former section 3176 (now section 8558), which provided that " 'the prevailing party' " shall recover its attorney fees " '[i]n any action against . . . [a] construction lender to enforce . . . a bonded stop notice.' " (*Mechanical Wholesale*, *supra*, 42 Cal.App.4th at p. 1660.) In that case, a contractor sued a construction lender to enforce a bonded stop notice, and sought attorney fees under former section 3176. The defendant construction lender prevailed in the action by establishing that no bonded stop notice existed, and then sought attorney fees under former section 3176.

The Court of Appeal in *Mechanical Wholesale* rejected the plaintiff's claim that because it had been determined that no bonded stop notice existed, the entire statutory scheme, including the related attorney fee provision, did not apply. The court in *Mechanical Wholesale* explained: "Here, there was 'an action' 'against a construction lender' on a 'bonded stop notice' in which the construction lender was clearly the 'prevailing party.' Under the statute, Fuji Bank [the construction lender] is entitled to its attorney fees. That plaintiff did not have a legal right to claim the benefit of the stop notice provisions is irrelevant. We need not be concerned as to why the stop notice claim was invalid; it is only necessary for Fuji Bank to have shown that it defeated the claim. Such invalidity will not bar fees to which a prevailing party is otherwise entitled." (*Mechanical Wholesale, supra*, 42 Cal.App.4th at p. 1661, fn. omitted.) In the accompanying footnote, the

15

*Mechanical Wholesale* court cited the analogous authority under section 1717. (*Mechanical Wholesale, supra,* at p. 1661, fn. 14.)

Plaintiffs in the present case do not deny that the action in this matter was brought to enforce what the complaint asserted were the governing documents of a common interest development, and that plaintiffs would have been entitled to recover attorney fees under former section 1354(c) had they prevailed in the lawsuit. Accordingly, under the rationale of the *Hsu*, *Santisas*, and *Mechanical Wholesale* decisions, it follows that defendants should be entitled to recover attorney fees under former section 1354(c) inasmuch as they were the prevailing party in the action.

Plaintiffs object to this conclusion on a number of theories, but, as we explain, none of the objections is meritorious.

First, plaintiffs argue that permitting a prevailing defendant to recover attorney fees under former section 1354(c) in this setting is inconsistent with the provisions of former section 1374, another provision of the CID Act, which provided that "[n]othing in this title [the CID Act] may be construed to apply to a development wherein there does not exist a common area as defined in subdivision (b) of Section 1351. [¶] This section is declaratory of existing law." (As amended by Stats. 2005, ch. 37, § 3, p. 502.)[4] The language of former section 1374, however, is apparently addressed to provisions of the CID Act that apply to "a development" not to "an action," and is at least ambiguous regarding the effect, if any, that the statute would have on the proper interpretation of former section

---

[4]     In the 2012 recodification of the CID Act, the substance of former section 1374 was reenacted as section 4201, which now provides: "Nothing in this act may be construed to apply to a real property development that does not contain common area. This section is declaratory of existing law."

16

1354(c). Looking beyond the statutory language, as defendants point out the legislative history of former section 1374 makes it clear that that provision was intended simply to protect residents of non-common-area subdivisions or community associations from being inadvertently subjected to the numerous obligations that the CID Act imposes upon common interest developments — including the election of a board of directors (former § 1363.03), the preparation and distribution of annual operating budgets (former §§ 1363, 1365), the levying of regular and special assessments (former § 1366), providing numerous notices to association members (former §§ 1365, subds. (e), (f), 1369.590, 1367.1, subd. (k), 1378, subd. (c)), complying with the Common Interest Development Open Meeting Act (former § 1363.05), and making accounting records, meeting minutes and other documents available for member inspections (former § 1363, subd. (e)). (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 67 (1993-1994 Reg. Sess.) as amended June 23, 1994, p. 2; Sen. Local Gov. Com., 3d reading analysis of Assem. Bill. No. 67 (1993-1994 Reg. Sess.), as amended Apr. 21, 1994, pp. 1-2.) Nothing in the legislative history of former section 1374 supports plaintiffs' claim that the provision was intended or should be interpreted to affect the interpretation and application of the prevailing party attorney fee provision of former section 1354(c) or to undermine that provision's reciprocal nature. Indeed, the purpose of former section 1374 ─ to protect the interests of homeowners who reside in non-common-interest developments ─ would clearly not be served by denying attorney fees to a defendant who prevails in a lawsuit by showing that, contrary to the plaintiff's claim, the subdivision in question is not a common interest development.[5]

---

[5] In a similar vein, plaintiffs also rely on former section 1352 (now § 4200), which provides that "[t]his title applies and a common interest development is

*(footnote continued on next page)*

Second, plaintiffs, like the Court of Appeal below, rely on the Court of Appeal decision in *Mount Olympus*, *supra*, 59 Cal.App.4th 885, but, as we shall explain, that decision does not support the denial of attorney fees to defendants in this case.

In *Mount Olympus*, *supra*, 59 Cal.App.4th 885, the underlying controversy arose over a home remodeling project that was proposed and begun by the defendant homeowners, the Shpirts. The home was located in a tract that was subject to a declaration of restrictions that had been recorded. The Shpirts' next-door neighbor, Ross, objected to the remodeling and claimed it violated the declaration of restrictions, which required, among other matters, that any proposed remodeling be submitted to the Mount Olympus Property Owners Association (MOPOA) for approval. The Shpirts twice submitted plans to the MOPOA that were rejected. Their third submission was tentatively approved by the MOPOA, subject to a number of conditions that included submission of a final plan to the MOPOA and the Shpirts' agreement to indemnify MOPOA should it be sued by Ross. The Shpirts did not fulfill the conditions but instead proceeded to demolish a portion of the existing home, allowed the property to fall into disrepair, and engaged in a pattern of abusive conduct interfering with Ross's enjoyment of his property.

---

*(footnote continued from previous page)*

created" whenever specified conditions are satisfied. Former section 1352, however, predated the prevailing party attorney fee provision of former section 1354(c) (see Stats. 1985, ch. 874, § 14, p. 2777), and thus clearly was not intended and cannot properly be interpreted to limit the scope of the latter provision's reciprocal effect.

Thereafter, MOPOA and Ross brought the lawsuit at issue in *Mount Olympus* against the Shpirts, alleging multiple causes of action, including (1) breach of contract (for violation of the tract's declaration of restrictions), (2) nuisance (for the accumulation of garbage on the property and the Shpirts' abusive conduct), and (3) enforcement of an easement assertedly possessed by Ross to an unobstructed view to the south and west of the Ross property.

At the conclusion of the trial, the trial court found the Shpirts had violated the declaration of restrictions and had created a nuisance, and entered judgment in favor of Ross and the MOPOA. After the judgment was issued, Ross sought attorney fees from the Shpirts based on four separate grounds: (1) the attorney fee provision of the CID Act (then former § 1354, subd. (f), a statutory predecessor of former § 1354(c), the provision at issue in the present case), (2) the attorney fee provision contained in the declaration of restrictions, (3) an indemnity agreement assigning MOPOA's right to attorney fees to Ross, and (4) Code of Civil Procedure former section 2033 (now Code Civ. Proc., § 2033.420), which permits a party to recover the expense (including attorney fees) of establishing the genuineness of a document when the losing party failed to admit the genuineness in response to a request for admission.

With regard to Ross's attorney fee request, the trial court concluded (1) that Ross was entitled to recover fees under the attorney fee provision of the CID Act because the tract was a common interest development, (2) that Ross was not entitled to recover fees on his own behalf under the declaration of reservations because that document did not authorize attorney fees in a suit between homeowners, and (3) that by virtue of the indemnity agreement between Ross and MOPOA, Ross was entitled to recover the share of attorney fees that MOPOA was entitled to recover under the declaration of reservations. Because the trial court concluded that Ross was entitled to recover all of his own attorney fees under the

19

attorney fee provision of the CID Act, it did not separately consider his request for a portion of his attorney fees as authorized by Code of Civil Procedure former section 2033.

The Court of Appeal in *Mount Olympus* affirmed the portion of the trial court's posttrial order awarding MOPOA's attorney fees to Ross under his indemnity agreement with MOPOA, but reversed the award to Ross of his own attorney fees under the attorney fee provision of the CID Act. On that point, the Court of Appeal concluded that, contrary to the trial court's determination, the tract in which the Shpirts and Ross properties were located was *not* a common interest development within the meaning of the CID Act because there was not a common area owned by the individual property owners. Finally, because the trial court had not addressed Ross's request for attorney fees under Code of Civil Procedure former section 2033 (concerning fees related to the Shpirts' alleged failure to admit the genuineness of documents), the Court of Appeal remanded the case to the trial court for consideration of that issue. (*Mount Olympus*, *supra*, 59 Cal.App.4th at pp. 892-896.)

The Court of Appeal in the present case apparently viewed the *Mount Olympus* court's decision with respect to the attorney fee provision of the CID Act as holding that whenever a trial court finds that a housing development is not a common interest development within the meaning of the CID Act, attorney fees are not recoverable under the attorney fee provision of that act. That understanding of the *Mount Olympus* decision, however, is mistaken. Because in *Mount Olympus* it was Ross who was seeking attorney fees under the attorney fee provision of the CID Act on the ground that the action was one to enforce the governing documents of an alleged common interest development, the Court of Appeal's determination that the tract in question was *not* a common interest development meant that Ross was *not* the prevailing party *in an action to enforce*

20

*the governing documents of a common interest development*. Although Ross was the prevailing party on *other* causes of action, insofar as the complaint purported to state a cause of action to enforce the governing documents of a common interest development, *it was the defendants, the Shpirts, rather than the plaintiff Ross, who were the prevailing parties with respect to that cause of action.*

In sum, the *Mount Olympus* opinion held that a plaintiff who sought attorney fees under the attorney fee provision of the CID Act was not entitled to an award of attorney fees *under that statute* when the plaintiff failed to establish that the tract was a common interest development, even when the plaintiff prevailed on other causes of action. The *Mount Olympus* decision, however, is not authority for denying a defendant, against whom an action to enforce the governing documents of a common interest development has been brought, the right to recover attorney fees under the statute when the defendant has prevailed in the action because the tract has been found not to be a common interest development. Unlike the plaintiff in *Mount Olympus*, defendants in the present case are the prevailing party in an action to enforce the governing documents of a common interest development.[6]

In addition to relying on *Mount Olympus*, *supra*, 59 Cal.App.4th 885, plaintiffs rely on two other Court of Appeal decisions, but neither decision supports their position.

---

[6] As noted above (*ante*, p. 6), the Court of Appeal in this case also cited a passage from a real property treatise to support its conclusion reversing the attorney fee award in favor of defendants. (See 12 Miller & Starr, Cal. Real Estate, *supra*, § 34:66, p. 34-229.) The passage in question, however, relies for authority solely upon the *Mount Olympus* decision (see 12 Miller & Starr, at p. 34-229, fn. 12), and thus provides no additional support for the Court of Appeal's determination.

21

In *Blue Lagoon Community Assn. v. Mitchell* (1997) 55 Cal.App.4th 472 (*Blue Lagoon*), a majority of property owners in a common interest development voted to approve two amendments to the development's declaration of restrictions, but the amendments did not receive the supermajority vote required by the applicable declaration of restrictions. The property owners favoring the amendments brought a petition in superior court utilizing a procedure authorized under former section 1356 (added by Stats. 1985, ch. 1003, § 1, p. 3222, now § 4275), permitting a court to reduce the percentage of affirmative votes necessary to amend a declaration of restrictions of a common interest development under specified circumstances. The proposed amendments were controversial within the development, however, and opposing homeowners hired an attorney and filed an objection to the petition. Following a contested hearing, the trial court denied the petition. Thereafter, the objecting homeowners sought an award of attorney fees, but the trial court denied the request.

On appeal, the Court of Appeal in *Blue Lagoon* affirmed the trial court's determination, rejecting the objectors' argument that they were entitled to attorney fees under former section 1354(c). The Court of Appeal explained: "Viewed objectively, the purpose of Civil Code section 1356 is to give a property owners' association the ability to amend its governing documents when, because of voter apathy or other reasons, important amendments cannot be approved by the normal procedures authorized by the declaration. [Citation.] In essence, it provides the association with a safety valve for those situations where the need for a supermajority vote would hamstring the association. When the limited purpose of section 1356 is fully understood it is obvious that a petition brought under this section is not an adversarial proceeding. No defendants are named. No rights are sought to be protected. No wrongs are sought to be redressed. As such, it cannot be said that by opposing the petition the objectors were enforcing the governing

22

documents and thus entitled to attorney fees and costs." (*Blue Lagoon*, *supra*, 55 Cal.App.4th at p. 477.) Thus, unlike this case, in which plaintiffs clearly brought an action to enforce the governing documents of a common interest development, the court in *Blue Lagoon* concluded that neither the petition nor the objection in that proceeding constituted an action to enforce the governing documents of a common interest development within the meaning of former section 1354(c).[7]

Plaintiffs additionally rely on the case of *Gil v. Mansano* (2004) 121 Cal.App.4th 739 (*Gil*), in support of their argument that an award of attorney fees is not authorized "where, as here, the statute is used defensively, and the language authorizing recovery of attorney's fees is limited to 'actions to enforce' . . . ." In *Gil*, the parties had entered into a release agreement that contained an attorney fee provision. One party brought suit against the other, alleging fraud, and the defendant responded by maintaining that the suit was barred by the release agreement. The trial court agreed with the defendant, entered judgment in its favor and awarded attorney fees to the defendant pursuant to the attorney fee provision of the release agreement.

---

[7] Indeed, in a separate passage in the *Blue Lagoon* decision, the Court of Appeal clearly rejected the plaintiffs' argument that the attorney fee provision of former section 1354 should not be read as intended to afford reciprocal attorney fee rights. In commenting on the potential consequences of the objectors' position, the *Blue Lagoon* court observed: "This argument is shortsighted. In this case, the objectors 'won.' But what if the Association had 'won' and the petition had been granted? If we were to hold, as the objectors urge, that they are the prevailing party and thus entitled to attorney fees because they successfully beat back the majority's efforts to amend the declaration, then is the Association entitled to its costs and fees against the objectors when they successfully bring a petition under Civil Code section 1356? If the objectors' analysis were correct, the answer would have to be yes." (*Blue Lagoon*, *supra*, 55 Cal.App.4th at pp. 477-478.)

The Court of Appeal in *Gil*, in a two-to-one decision, reversed the attorney fee award, interpreting the attorney fee provision in the release agreement, which authorized attorney fees when "action" was brought to enforce the agreement, to authorize such fees only when a party filed a lawsuit to enforce the release and not when a party proffered the release as a defense to a lawsuit. (*Gil, supra,* 121 Cal.App.4th at pp. 742-745.) One Court of Appeal justice dissented in *Gil*, maintaining that the majority had taken too narrow a view of the term "action" to enforce the release as used in the attorney fee provision in the release. (*Id.* at pp. 746-747 (dis. opn. of Armstrong, J.).) A subsequent Court of Appeal decision agreed with the dissenting justice in *Gil* on this point. (See *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 275-276.)

Without expressing any view on the merits of the *Gil* decision itself, we observe that, in any event, *Gil* provides no support for plaintiffs' position here. Unlike the defendant in *Gil*, defendants in this case did not defend the action by claiming that the declaration of Tract 19051 was the governing document of a common interest development and by seeking to enforce the declaration as a defense to the action. Here, it was plaintiffs who filed an action to enforce the declaration as an asserted governing document of a common interest development. Thus, even under *Gil*, it is clear that the lawsuit here constituted an action to enforce the governing documents. Because defendants were the prevailing party in such an action, they are entitled to recover attorney fees under former section 1354(c).

### III. Conclusion

For the reasons discussed above, the judgment of the Court of Appeal is reversed insofar as it reversed the trial court's attorney fee award in favor of defendants.

**CANTIL-SAKAUYE, C. J.**

**WE CONCUR:**

**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Tract 19051 Homeowners Association v. Kemp

_____

**Unpublished Opinion** XXX NP opn. filed 5/15/13, 2d Dist., Div. 4
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S211596
**Date Filed:** March 5, 2015

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Richard L. Fruin, Jr.


_____

**Counsel:**

Marcia J. Brewer; Law Office of Mifflin & Associates and Ken Mifflin for Plaintiffs and Appellants.

Robert L. Jones, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent Maurice Kemp.

Turner Law Firm and Keith J. Turner for Defendant and Respondent Eric Yeldell.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marcia J. Brewer
400 Corporate Pointe, Suite 800
Culver City, CA  90230
(310) 670-5325

Keith J. Turner
Turner Law Firm
429 Santa Monica Boulevard, Suite 500
Santa Monica, CA  90401
(310) 454-6190