Filed 10/24/24; Certified for Publication 11/6/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRIS ROBLES et al., | |
| Plaintiffs and Appellants, | G064119 |
| v. | (Super. Ct. No. CIVDS2007038) |
| CITY OF ONTARIO et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of San Bernardino County, Michael A. Sachs, Judge. Reversed and remanded.

Law Offices of Scott J. Rafferty and Scott J. Rafferty for Plaintiffs and Appellants.

Parrinello Gross & Leoni, Nielsen Merksamer, Marguerite M. Leoni, Chirstopher E. Skinnell and David J. Lazarus; Best, Best & Krieger and Ruben Duran for Defendants and Respondents.

\* \* \*

This is a case under the Voting Rights Act of 1965 (52 U.S.C. § 10301(c) (VRA), the California Voting Rights Act (Elec. Code, § 14027)[1] (CVRA), and title 42 United States Code section 1983. Plaintiffs Chris Robles and the California Voting Rights Initiative alleged the City of Ontario (the city) violated both acts by failing to conduct district, rather than at-large, elections for members of its city council. The parties eventually entered into a settlement and stipulation for entry of judgment (stipulated judgment) which would eventually provide such elections. The stipulated judgment also provided for attorney fees incurred to date.

The crux of the current conflict is whether plaintiffs are entitled to any further attorney fees under the stipulated judgment. We conclude plaintiffs, under the plain language of the stipulated judgment, were entitled to seek attorney fees incurred in the effort to enforce the stipulated judgment's terms. Therefore, we reverse and remand the order for the trial court to decide, in the first instance, whether plaintiffs are prevailing parties, and if so, the appropriate amount of an attorney fees award.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the interests of brevity, we summarize the factual background in light of the issues relevant to the appeal. While we have reviewed the entire record, we have not included every underlying fact or step in the trial court litigation.

*A. Commencement of Litigation*

In January 2020, plaintiffs' attorney sent a letter to the city asking the city council to transition from its at-large method of electing council members to election by district. The letter contended that the at-large

---

[1] Subsequent statutory references are to the Elections Code unless otherwise indicated.

method of election diluted the electoral influence of Latinos as a community, and state and federal law required the council to adopt a map for district elections that increased the opportunity to influence elections for Latino, Asian, and Black voters. The letter asked for new districts to be drawn up in time for the 2020 election.

In March, plaintiffs filed the instant lawsuit against the city, the city council, city officials, and individual council members (defendants), alleging violations of the CVRA, VRA, and title 42 United States Code section 1983. Plaintiffs sought an injunction against the scheduled 2020 at-large election, an order directing the city to create new districts in time for that election, and other relief.

Defendants demurred, arguing failure to state a claim. The court's tentative ruling sustained the demurrer with leave to amend. Thereafter, the parties settled the case, jointly submitting the stipulated judgment.

B. *The Stipulated Judgment*

This complex agreement provided in paragraph 6, among other things, that the city would switch to district elections in 2024 and set forth a process for drawing the district maps. The mapping process was required to "follow the standards and procedures set forth in . . . [former] sections 21601, 21607.1, and other applicable law" and to observe other specified procedures, most of which were part of the California Fair Maps Act in effect at the time.[2] (See Stats. 2019, ch. 557, §24, eff. Jan. 1, 2020.) The parties agreed the final map was to be adopted by December 31, 2022, which would allow that map to be used for 2024 city council elections.

[2] Many of the Elections Code provisions relevant to this case were amended effective January 1, 2024.

3

The city also agreed, in paragraph 5.1, to pay "$300,000 in full satisfaction of attorneys' fees and litigation expenses in this Action consistent with Elections Code section 14030 . . . . The City accepts plaintiffs' attorneys' statement for this claim and representation that it is based on actual time and expenses incurred." In paragraph 5.2, the parties agreed that "except as otherwise expressly provided in this Stipulation, each party shall bear its own costs, expenses, and attorneys fees arising out of or relating to the Action."

In paragraph 9, which addressed mutual release of claims, plaintiffs released defendants "from any and all claims . . . debts, damages, costs, expenses, including expert fees, losses, or attorneys' fees of whatever nature, involving or relating to the City's electoral system, or elections held thereunder, whether known or not known . . . or in any way related to (i) the facts alleged in the complaint . . . or (ii) the 'at-large' electoral system of Defendant City . . . which the Plaintiff Releasors have or may have against the Defendant Releasees, except for rights to enforce this Stipulation, or as provided herein."

Paragraph 10, which was a waiver of claims under Civil Code section 1542, included that section's language as required, and further stated: "Notwithstanding these provisions of Section 1542, [the parties] expressly acknowledge that this Stipulation is intended to include . . . all Claims described [elsewhere in the agreement] . . . and that the settlement reflected in this Stipulation contemplates the extinguishment of all such Claims, except for rights to enforce this Stipulation." The court entered the stipulated judgment on June 4, 2021.

4

*C. Brief Summary of the Districting Process*

According to the city, the districting website was available to the public after March 22, 2022, and announced four public hearings and five community workshops, as well as offering other information and the opportunity to submit draft maps and public comments. The city averred the website was regularly updated and that "members of the public submitted 13 proposed maps by July 1, 2022." Three maps were developed by the city's demographic consultant. The city asserted that all public hearings were noticed in Ontario's newspaper of general circulation.

Plaintiffs claim, however, that the city violated section 10010, subdivision (a)(1), which requires "the political subdivision shall hold at least two public hearings over a period of no more than 30 days, at which the public is invited to provide input regarding the composition of the districts" prior to the drawing of a draft map or maps. The first hearing was held on April 5, 2022, and the second more than 30 days later, on May 10.

Plaintiffs also asserted, in a series of letters dated May through July 2022, that the city had violated numerous provisions in the stipulated judgment. The city had agreed to follow the standards set forth in former sections 21601, 21607.1, "and other applicable law" when drawing district maps. The alleged violations concerned the timing, execution, and follow-up relating to community meetings that were required to take place on specified timelines prior to the adoption of proposed maps.

In sum, plaintiffs alleged that the spirit of the relevant provisions of the Election Code was to give the public the opportunity and ability to understand the districting process and provide input into it. Under former section 21608, city councils are required "to encourage residents, including those in underrepresented communities and non-English speaking

communities, to participate in the redistricting public review process." (See Stats. 2020, ch. 90, §15, eff. Jan. 1, 2021.) City councils are required to make an effort to provide media coverage of the process, including through non-English media organizations, to provide information through civic engagement and other groups, to arrange for live translation of public hearings or workshops, and to publish the time and date of hearings and workshops on the Internet at least five days in advance. Draft maps are to be published prior to hearings and workshops. The public must be allowed to submit public testimony or draft maps in writing and electronically. Cities are required to record or prepare a written summary of each public comment and council deliberation held, and make them available to the public. Cities are also required to establish and maintain a web page dedicated to redistricting, which is required to include a general explanation of redistricting in English and other applicable languages, information regarding testifying or submitting testimony, a calendar of all relevant hearings and workshops, and other information. (Former § 21608.)

The Elections Code also includes procedural requirements, including the number of hearings that must be held, and when. (Former § 21607.1.) Further, if the city council consolidates a regular meeting with a redistricting hearing, the hearing must be held at a specified time noticed to the public. (Former § 21607.1, subd. (d).) Plaintiffs claimed the city had failed to comply with these provisions.

Meanwhile, the districting hearings and procedures continued. Hearings were held in April through July, with an additional hearing scheduled for November.

*D. The Motion to Enforce*

On August 1, 2022, plaintiffs filed an ex parte application to shorten time on an application for an order to show cause on purported violations of the stipulated judgment as noted above. Plaintiff submitted declarations stating the city had either violated or failed to comply with numerous statutory requirements included in the stipulated judgment, including section 10010 and former sections 21607.1, and 21608.

As a remedy, plaintiffs proposed either adoption of their proposed maps or deferring a decision on whether to impose a map pending additional public input. The city opposed.

At a hearing on October 4, 2022, the court expressed numerous concerns about the stipulated judgment, but also found that "it does appear that the City has not complied with the terms of the settlement." The court questioned "whether the City can still comply with the requirements of . . . §10010 at this late stage of the game, and if not, what would be the proper remedy?" The court also requested briefing on how to proceed, as it believed that "the terms of the stipulated judgment incorporate California Fair Maps Act, which appears to me, based on my reading of the pertinent statute, it doesn't apply." Incorporating the procedural requirements of the Fair Maps Act, the court suggested, was inconsistent with section 10010, subdivision (a).[3] "I can't enforce an illegal settlement agreement."

The court requested further briefing and denied plaintiffs' request for further attorney fees for the moment. The court noted: "But if the

[3] Section 10010, subdivision (a) applies to at-large jurisdictions that conduct legislative hearings to draw district lines. The Fair Maps Act has certain protections for public input that are lacking in section 10010, subdivision (a). (Former §§ 21607.1, 21608.) The stipulated judgment agreed to incorporate both provisions.

7

settlement agreement contains an illegal or invalid term, the entire settlement agreement is void ad initio. That appears to be the case based on my further review of the matter." The minute order stated the motion to enforce the stipulated judgment was granted in part and denied in part.

Eventually, defendants conceded the issue of whether the stipulated judgment was valid. They admitted the requirements of section 10010, subdivision (a) were not inconsistent with the provisions of former sections 21607.1 and 21608.

On September 6, 2022, Robles submitted the proposed map nicknamed the "Unity Map." After resistance by defendants and further efforts by plaintiffs, the city announced that the staff would recommend the council adopt the Unity Map on November 1, and the map was later adopted.

*E. Motion for Attorney Fees*

At a hearing on December 9, 2022, the court noted the substantive issues appeared to have been resolved, and the city had adopted the map suggested by Robles. As to attorney fees, the court stated it would require a separate motion. The court expressed skepticism that plaintiffs were a prevailing party.

On January 10, 2023, plaintiffs' attorney moved for attorney fees, claiming 130 hours and $3,140 in postjudgment costs. Defendants claimed the stipulated judgment precluded any further fee award.

At the hearing on February 3, the court made a tentative ruling: "My position has always been—and we've discussed this on numerous occasions—that the stipulation that the parties entered into did not provide fees beyond those already paid. And that still is of my belief. Also, it's of my belief that the motions filed by Mr. Robles and his attorney, since I've had the case, have been unnecessary. What I perceived was simply Mr. Robles

8

pushing the matter, pushing it, pushing it, pushing it because it wasn't moving quick enough. [¶] As we spoke about on numerous occasions, when we have these motions and issues before me, the City of Ontario has been doing everything they can. You may disagree with that, counsel, but I believe they have been doing everything they could in their power to comply with the stipulation they've entered into. And that's where I'm coming from, but I'll be happy to look at your papers as long as I get them by noon on Monday. And then if I require further briefing, I'll let the parties know." The court did not wish to hear further from plaintiffs' counsel.

On March 6, the court adopted the tentative without further explanation. Plaintiffs now appeal the order denying attorney fees.

## DISCUSSION

## I.

### PLAINTIFFS' LEGAL ENTITLEMENT TO SEEK ATTORNEY FEES

*A. Standard of Review and General Principles of Law*

"'On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law.'" (*De La Carriere v. Greene* (2019) 39 Cal.App.5th 270, 275.) This includes cases where the right to recover attorney fees is dependent on the interpretation of a contract without extrinsic evidence. (*San Francisco CDC, LLC v. Webcor Construction, L.P.* (2021) 62 Cal.App.5th 266, 285.)

The default for attorney fees not specifically provided for by statute is commonly referred to as "the 'American rule,'" under which each party pays its own fees. (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142.) Code of Civil Procedure section 1021 permits parties to "'contract out' of the American rule by executing an agreement" that allocates attorney fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 279.) It states, in relevant

9

part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.)

"The meaning and effect of a judgment are determined according to the rules governing the interpretation of writings generally." (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 766.) We must interpret a contract so as to give effect to the mutual intent of the parties at the time the contract was formed. (Civ. Code, § 1636.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) Courts must also endeavor to give effect to every part of a contract, "if reasonably practicable, each clause helping to interpret the other[s]." (Civ. Code, § 1641.) "[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention." (*Lazar v. Superior Court* **(**1940) 16 Cal.2d 617, 622.)

*B. The Relevant Provisions of the Stipulated Judgment*

Pursuant to Code of Civil Procedure section 664.6, subdivision (a), "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." The stipulated judgment stated: "A further purpose of this stipulation is to avoid unnecessary litigation by the Parties jointly requesting the Court to enter into a judgment pursuant to its authority under the Code of Civil Procedure

10

[section] 664.6 . . . ." Accordingly, the trial court had ongoing jurisdiction to enforce the stipulation.

As discussed in more detail above, in the attorney fees provision in the stipulation, paragraph 5.1, the city agreed to pay $300,000 "in full satisfaction of attorneys' fees and litigation expenses in this Action." Paragraph 5.2 stated that "except as otherwise expressly provided in this Stipulation, each party shall bear its own costs, expenses, and attorneys fees arising out of or relating to the Action." In the release, paragraph 9, plaintiffs released defendants from all claims "including . . . attorneys' fees . . . except for rights to enforce this Stipulation."

According to defendants, the language of paragraph 5.1 not only included attorney fees already incurred, but applies to future attorney fees as well, ignoring the language about enforcing the stipulated judgment. Further, interpreting the language in this matter would also require us to ignore the following sentence: "The City accepts plaintiffs attorneys' statement for this claim and representation that it is based on actual time and expenses incurred." "[I]ncurred" is in the past tense. If the parties had intended this language to cover future attorney fees, the language should have been clear on that point.

What we have before us is language which set forth an attorney fees award for fees already "incurred." The language clearly states that in most situations, plaintiffs were precluded from seeking further attorney fees. But the express language of the stipulated judgment also included a carve-out "to enforce this stipulation." That is exactly what plaintiffs sought when they filed their motion to enforce. Despite the voluminous briefing on this issue, at the end of the day, this is not a close call. Plaintiffs had the legal right, based on the plain language of the stipulated judgment, to seek

11

additional attorneys fees for enforcing its terms. Defendants' arguments to the contrary are simply unpersuasive.

Accordingly, we find the trial court erred in deciding plaintiffs had no right to seek additional attorney fees. We therefore remand for the trial court to decide, in the first instance, whether plaintiffs qualify as prevailing parties, and if so, the amount of fees that should be awarded.

## II.

### PREVAILING PARTY

At the hearing on plaintiffs' attorney fee request, the court stated: "[I]t's of my belief that the motions filed by Mr. Robles and his attorney, since I've had the case, have been unnecessary. What I perceived was simply Mr. Robles pushing the matter, pushing it, pushing it, pushing it because it wasn't moving quick enough. [¶] As we spoke about on numerous occasions, when we have these motions and issues before me, the City of Ontario has been doing everything they can. You may disagree with that, counsel, but I believe they have been doing everything they could in their power to comply with the stipulation they've entered into."

This comment was dicta once the court decided plaintiffs had no legal entitlement to seek attorney fees. But this statement also reflects an incorrect standard for determining the prevailing party, which we clarify for purposes of remand. The trial court has discretion in determining which party has prevailed, or that no party has prevailed. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) If a party obtains an unqualified victory, that party is entitled as a matter of law to be considered the prevailing party (*Id.* at p. 876.)

"[T]he terms 'prevailing party' and 'successful party,' . . . are synonymous." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570.)

12

"The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives. . . . 'In everyday use, "prevail" means "gain victory by virtue of strength or superiority: win mastery: triumph." [Citation.] . . . A lawsuit's ultimate purpose is to achieve actual relief from an opponent. Favorable judgment may be instrumental in gaining that relief. Generally, however, "the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant . . . ." [Citation.] On this common understanding, if a party reaches the "sought-after destination," then the party "prevails" regardless of the "route taken."'" (*Id.* at p. 571.)

Thus, whether plaintiffs' counsel was "pushing" or whether defendants were "doing everything they can," is not relevant to an assessment of which party should be granted prevailing party status.

### DISPOSITION

The court's order denying plaintiffs attorney fees with respect to the motion to enforce is reversed. The matter is remanded for further proceedings consistent with this opinion. Plaintiffs are entitled to their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRIS ROBLES et al., | |
| Plaintiffs and Appellants, | G064119 |
| v. | (Super. Ct. No. CIVDS2007038) |
| CITY OF ONTARIO et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Respondents. | |

Attorney Scott J. Rafferty has requested that our opinion, filed on October 24, 2024, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

14